WESTERN MANUF'G CO. *v.* THE GUIDING STAR.

*(Circuit Court, S. D. Ohio, W. D. January 28, 1889.)*

1. CARRIERS—OF GOODS—LIABILITY FOR LOSS—BURDEN OF PROOF.
   On a libel for damage to butterine during transportation, respondent has the burden of proving defective cooperage of the tubs containing it, or its nature or quality, and the action of the weather upon it, from which respondent alleges the damage resulted.

2. SAME—EVIDENCE—SUFFICIENCY.
   The defense that the damage resulted from the nature of the butterine under the action of the weather, is not established where it is shown that the butterine was manufactured with special reference to the temperature at the points of shipment and delivery, and had withstood a test of 92 deg., and was in good condition when shipped, and that other shipments of similar quality and cooperage, on the same and other vessels, made at and about the same time, in the same state of weather, were delivered in good condition, and where proper ventilation is not shown.

3. SAME—PRESUMPTION.
   The tubs having been in good condition when shipped, and in bad condition when delivered, many of them being broken in, proper stowage, which is a part of the obligation to carry safely, will not be presumed, though the place of stowage may have been selected without fault.

4. 'SAME—DAMAGES.

    The difference between the price for which the article was sold and its market value at the place of delivery on its arrival, had it been in good condition, with interest, is the proper measure of damages.

5. SAME.

    The expenses of libelant's agent in going to the place of delivery to investigate as to the butterine which had been rejected, are not a proper charge against respondent.

In Admiralty. Libel for damages. On appeal from district court.

Libel by the Western Manufacturing Company against the steamer Guiding Star, for damage to goods in course of carriage. Decree for respondent, and libelant appeals.

*Lincoln, Stephens & Lincoln,* for libelant.

    *Follett, Hyman & Kelley,* for respondent.

JACKSON, J. The evidence in this case clearly establishes that the butterine consigned by libelant to C. H. Dolson and Smith Bros. & Co. was of good quality, in good condition, and put up in good tubs or packages, suitably and properly coopered. The bills of lading issued by the respondent admit that the consignments were received in good order, and were by it to be delivered to the consignees at New Orleans "in like good order," "dangers of fire, navigation, explosion, and collision excepted." It is also clearly shown by the testimony, and not controverted by the respondent, that when the butterine arrived at New Orleans it was in a damaged condition, unmerchantable, and its market value reduced about 50 per cent. It is neither claimed by respondent, nor shown by the proof, that this loss or damage to the butterine, which occurred while in transit, was caused or occasioned by any one or all of the excepted dangers mentioned in the bill of lading. The defenses set up and relied upon by respondent in the court below and in this court are: *First,* that libelant selected the place on the steam-boat where the packages of butterine should be stowed, and where the same were in fact stowed, as the coolest and best position on the boat; and, *secondly,* that the tubs in which the butterine was packed were insecure, and insufficient for the purpose, and that the loss or damage resulting to the butterine during its transportation to New Orleans was occasioned by the construction or cooperage of the tubs, in connection with the heat of the weather at the time of shipment and during the transit.

The proof does not establish that libelant or its agent selected the place of stowage for the freight; libelant's agent only requested that it should be stowed in the coolest place on the boat, and the clerk (Jones) and mate (Harrison) both designated and selected the forward hold, near the hatches or breast-hooks, as being the safest and coolest place on the boat, assigning as a reason for that opinion and that selection, "that the scuttle-hatch would be open, and a current of air would be passing through, which would keep that part of the hold cool." But while this first ground of defense is not sustained, it does not appear that this selection was improperly made, or that respondent is chargeable with fault as to the place of stowage, since it is shown by the evidence that the for-

ward part of the hold, in hot weather, is the coolest location or position on the boat for articles of a perishable character, or such as need and require protection from the sun or heat, provided the scuttle-hatch is kept open, to give it proper ventilation.

In respect to the second ground of defense the burden of proof rests upon respondent to establish that the loss or damage to the butterine was caused or occasioned by the insecure and insufficient tubs in which it was packed, or by the defective cooperage of such tubs, as alleged in its answer, in order to exempt itself from liability. It is not claimed in the answer that the loss or damage to the butterine complained of resulted from any intrinsic or inherent quality of the article itself, but only from the defective character of the tubs in which it was packed. In the argument of the case, however, counsel for respondent have insisted that the loss or damage occurred from the character of the butterine, which it is claimed melted, and became liquefied, by reason of the temperature of the atmosphere, and in that condition, with defective coopering of the tubs, was lost or injured. Without stopping to consider whether respondent can have the benefit of this latter claim, not relied on in its answer, we may say that this, as well as the defense of defective cooperage of the packages, casts upon respondent the burden of proof, in order to escape liability for the loss or damage to the freight occurring while in transit. As stated in *Hastings* v. *Pepper*, 11 Pick. 43, cited with approval by the supreme court in *Nelson* v. *Woodruff*, 1 Black, 160, the well-settled rule of law is that, when loss or damage occurs to freight transported by a common carrier, "the presumption of law is that it was occasioned by the act or default of the carrier, and of course the burden of proof is upon him to show that it arose from a cause existing before his receipt of the goods for carriage, and for which he is not responsible." It is also settled that a common carrier is not responsible for the ordinary evaporation of liquids occurring in course of transit, or for leakage arising from secret defects in the casks, which existed, but were not apparent, when received for carriage; nor for loss or injury occasioned by the peculiar nature of the article carried at a particular season of the year, such as that resulting from the fermentation of molasses, or the leakage of liquid lard from barrels, although the bill of lading issued therefor describes the freight as received in good order, and undertakes to deliver the same at destination in like good order; but in all such cases, when loss or damage does occur during the course of transportation, it is incumbent upon the carrier to establish by satisfactory proof that such loss or injury was occasioned by causes which he could not control, resulting from the nature and condition of the article,—as secret defects of the casks, barrels, or vessels, in which it is packed. *Nelson* v. *Woodruff*, 1 Black, 158–163, and cases there cited, fully illustrate these general principles. When the loss or damage results or is occasioned by any of the excepted perils or dangers mentioned in the bill of lading, the shipper must *prima facie* bear the loss; but he may impose it upon the carrier by proving negligence, or that it might have been avoided by the exercise of reasonable care, skill, and attention on the part of the carrier. Reasonable care, diligence, and skill

are demanded and required of carriers even in respect to losses resulting from dangers and perils excepted in bills of lading. When the carrier shows that the damage complained of was occasioned by an excepted peril, the burden of proof then rests upon the shipper to establish negligence or want of proper care and diligence on the part of the carrier in order to hold him liable. But when the damage is not occasioned by one of the perils from which the carrier has exempted himself by the bill of lading, as in the present case, the shipper is not called upon to show actual blame, fault, or negligence on the part of the carrier in order to hold him liable. In such cases the loss or injury to the shipper's goods while in course of carriage is sufficient proof of negligence or misconduct, and of *prima facie* liability, and the *onus probandi* is then on the carrier to exempt himself. Everything is negligence on the part of a common carrier which the law or his express contract does not excuse. It is enough for the shipper to show that his goods reached their destination in a damaged condition in order to render the common carrier liable, and the burden of proof is then on the carrier to show, and show satisfactorily, that it was occasioned by, or resulted from, such causes as will exempt him from liability. These principles are very clearly laid down in *Clark* v. *Barnwell*, 12 How. 280; nor is there anything to the contrary announced in *Nelson* v. *Woodruff*, 1 Black, 158, cited and relied on by counsel for respondent.

Now, testing the present case by the foregoing rules, the question, and the only question, presented is, has the respondent satisfactorily established its defense, either that libelant's butterine was damaged by the insecure or defective cooperage of the tubs containing the same, or that such damage resulted from the nature or quality of the butterine itself under the action of the weather, while being transported, so as to exempt it from liability for the injury? After a careful examination of the evidence, we think neither of said defenses is sustained. The testimony shows no defective cooperage in the packages; on the contrary, it is affirmatively established that the tubs in which the butterine was packed and shipped were of good and proper material, were well made, and in all respects secure and sufficient. They were such as libelant habitually used in shipping butterine, and in all other instances, with perhaps one exception, proved secure and sufficient. They were in fact, as recited in the bill of lading, in good order when received by the respondent, but when delivered they were in bad order and condition,—many of them were broken in at the heads or ends, and their contents entirely gone, showing that they had been subjected to rough handling, or improper stowage, by contact with, or pressure from, other freights. Mere melting or liquefaction of the butterine might have occasioned leakage, but would hardly have caused the breaking or the bursting in of the heads or ends of the tubs. In this connection it is important to notice that, while the place of storage may have been selected without fault, respondent has not shown or stated any fact or facts as to the stowage itself, or how the tubs of butterine were placed or deposited in respect to other freights, whether beneath or above such other freight; whether properly or improperly stowed

does not appear from the evidence. The court is not to presume, in the absence of proof and in favor of the carrier, that the freight was properly stowed. Its character was known to respondent when it was received for carriage, and respondent's duty to stow it properly in the place selected was certainly a part of its obligation to carry safely. No examination was made during the trip to ascertain the condition of the tubs or their contents, or to see whether the freight was being injured or damaged from any cause. In *Nelson* v. *Woodruff*, 1 Black, 158, the carrier showed affirmatively that the barrels of lard were deposited, not only in a suitable place, but that they were carefully and properly stowed in that place. If we look to the opinions expressed by the witnesses, only one suggests that the damage to the butterine resulted from defective cooperage, while the great majority of them, and those most competent to judge, being dealers in butterine, express the most decided conviction that the injury resulted from bad or improper stowage. But, without reviewing the evidence in detail, it is sufficient to say that it falls short of establishing, in any satisfactory way, respondent's defense of insecure, insufficient, or defective cooperage as the cause of the damage to the butterine.

How stands the case on the other defense relied upon in argument, that the loss or injury resulted from the nature or quality of the butterine, under the action of the hot season of the year in which it was shipped? It is clearly shown that this butterine was specially manufactured to stand the temperature of summer heat, both at Cincinnati and at New Orleans; that it was subjected to an actual test of 92 deg. to 93 deg. of heat, and remained solid; that it was firm and solid when delivered to and received by the carrier; that other shipments of butterine, prepared in the same manner, and subjected to the same tests, and consigned to New Orleans, were made by libelant a few days before and a few days after the consignment in question, and when the weather was just as warm, and that they all reached their destination in good order and condition, and were received by the consignees without complaint. In one instance,—a shipment made a week later,—the boat was stranded on the way down, and subjected to unusual delay in arriving at New Orleans, yet the butterine reached there safely, and in good order. It furthermore appears that other consignments of butterine similar in quality and cooperage were shipped by libelant on respondent's boat on this same trip, consigned to Vicksburgh and New Orleans, which reached their destination in good order. The fact that other butterine of the same character and quality, manufactured and packed in the same way, went through the same trip on the same boat in good order, without melting or becoming liquefied, goes far to establish that the injury on the lots consigned to Dolson and Smith Bros & Co. was not occasioned by the intrinsic quality or inherent defects in the nature of the butterine itself, developed by the state of the weather when shipped and during the transit. It certainly does not establish the defense relied on by respondent, nor bring the present case within the decision of *Nelson* v. *Woodruff*, 1 Black, 158–163, where the lard was actually shipped in bad condition,

being melted and in a liquid state or shape, liable to loss from leakage, when delivered to and received by the carrier, in hot weather. The present is clearly distinguishable from that case in its material and controlling facts. Again, it is shown that, in transporting articles of a perishable character, or such as require protection from the sun or heat when stowed in the forward hold of a steam-boat, the scuttle-hatch, or forward hatchway, should be kept open as much as possible, in order to give such freight proper ventilation; and it is in proof that respondent's proper officers assured the agents of libelant that "the scuttle-hatch would be open, and a current of air would be passing through, [the forward hold where the butterine was stowed,] which would keep that part of the hold nice and cool." It is not only not shown that this proper ventilation was given by opening or keeping open the scuttle-hatch during the trip, but the contrary is fairly inferable from the testimony. The necessity of keeping the butterine cool, or as cool as its place of stowage would permit or allow without injury to other freights, was not only understood by, but was incumbent upon, respondent in the performance of its transportation service; and it has failed to show that such care as it represented would be taken, in having the hold ventilated by keeping the scuttle-hatch open during the trip, or as much so as possible, was carried out and observed on its part. Under such facts and circumstances, the cases cited and relied on by counsel for respondent do not support its defense that the injury resulted from causes over which it had no control. We do not deem it necessary to review those cases in detail. They are not in conflict with the well-settled rules of law stated above; and, applying those principles to the facts of the present case, we are of the opinion that respondent's defenses have not been made out or satisfactorily established, and that on the showing made the *prima facie* case in favor of libelant is not rebutted. The conclusion of the court is, therefore, that respondent is liable to libelant for the injury which the butterine sustained while in transit to New Orleans. The proof shows that the butterine in question was worth in the New Orleans market on June 19, 1879, from 15 to 16 cents per pound, had it arrived there in good order. In its damaged condition it sold for 7½ cents per pound. Respondent is liable for this difference, amounting to $580.20, on which interest is allowed from June 19, 1879. The expenses of libelant's agent in going to New Orleans to look after the rejected butterine are not allowed as a proper charge against respondent. The decree of the district court is reversed, and a decree will be entered in this court in favor of libelant and against respondent for said sum of $580.20, with interest from June 19, 1879, and respondent will be taxed with the costs of the cause in this court and in the court below. Let a judgment be accordingly so entered.