## THE CITY OF PARA.[1]

### In re THE CITY OF PARA.

(*District Court, S. D. New York.* January 16, 1891.)

1. SHIPPING—STRANDING—NEGLIGENCE.
   A steam-ship, running past Old Providence island, in mild weather, had the land in sight for 40 minutes. A slight haze rendered distances deceptive, and the master supposed himself some 7 miles off shore. No soundings were taken and no calculations made to verify the supposed distance. In fact, the vessel was within a mile and a half of the shore, and afterwards struck upon a coral reef located on the charts with which the vessel was provided. *Held,* that her navigation was negligent.

2. SAME—LIMITATION OF LIABILITY—PROXIMATE CAUSE.
   The ship-owners, not being privy to the faults which brought about the stranding, were *held* entitled to a limitation of their liability; and the taking of the westerly route, by the owners' direction, in consequence of some apprehension about the shaft, held not approximate cause of the stranding.

3. SAME—DAMAGES—LEX CONTRACTUS.
   The damages recoverable against a vessel which has been negligently stranded, and hence damaged her cargo, include the loss of perishable cargo rendered worthless by delay, the partial damage to such cargo as has been brought into port, the costs and charges attending the salvage of the cargo, and damage by reason of differences in market prices from the delay in arrival; and the ship and bills of lading being American, *held* governed by our law, and exceptions of negligence invalid.

In Admiralty. On petition for limitation of liability.

*Hoadley, Lauterbach & Johnson* and *C. Donohue,* for petitioner.

*Carter & Ledyard, S. Chubb, Geo. A. Black,* and *A. R. McMahon,* for insurance companies.

BROWN, J. At 10:24 P. M. of May 17, 1888, the steamer City of Para, while on a voyage from Aspinwall to this port, struck on a reef about 1½ miles off the south-westerly point of Old Providence island. After several weeks she was got off, and towed to this port, where she was repaired. A part of her cargo was not damaged; other parts, consisting of perishable fruit, were either damaged, or rendered worthless, by the detention, and thrown overboard. Large expenses were incurred in getting the vessel off and bringing her, with what cargo remained, into port. These expenses have been paid mostly by the insurers of the different interests in ship and cargo. Large claims against the ship and her owners having thus arisen, upon the contention that the stranding was by negligence, or want of proper caution and care in navigation, the Pacific Mail Steam-Ship Company, as owners of the steamer, filed a petition to limit their liability, in case the stranding should be held negligent, at the same time denying this charge, and denying that the company was liable upon the alleged claims. An appraisement of the vessel was ordered. This was made by taking her value as she was when she arrived in this port, less her proportion of the salvage expenses in getting her off and bringing her here. A bond was filed for the value as thus

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

appraised, and the case has been brought to trial upon the issue of negligence raised by the answers of the various insurers and owners of the cargo.

At the time of the stranding the weather was mild. There was a little haze or mist that tended to make estimates of the distance of the island somewhat deceptive. This was not sufficient, however, to prevent the island being seen about 40 minutes before the stranding; and the position of the ship had been accurately ascertained a few hours before, by observations taken the previous noon, and at 5 o'clock following. The western end of the island, when first seen, bore about one-half a point on the port bow. The master continued his previous course for 15 minutes, running straight for the land. He then changed his heading $1\frac{1}{2}$ points to port, bring the land one point on his starboard bow, and, after running 10 minutes more, again changed three-fourths of a point more to port. Fourteen minutes afterwards the ship struck. The master supposed the course taken would carry him 7 miles west of the land, instead of $1\frac{1}{2}$ miles, as the event proved.

The reef was one of the numerous coral reefs of that region, all of which were located upon the chart with which the ship was provided. The master intended to run to the westward of the reefs located upon the chart. The accident was due wholly to miscalculation as to the distance he was running from land. No soundings were taken, nor any calculations made, when near the island, in order to verify the supposed position of the ship. Upon this view of the facts, I cannot exempt the ship from liability. There was plenty of sea room to the westward. The position of the vessel at the previous noon and at 5 P. M. had been ascertained by observation. No real explanation is offered for running upon the reef, except the mere possibility of an unusual easterly current setting towards land, of which no specific proof is furnished. Admitting that it was desirable to make the western point of the island, no sufficient reason is suggested for not immediately turning to port when the south-western point of land was distinctly made a half point on the port bow, or for not sheering sufficiently, and by an ample margin, to avoid the well-known reefs of that region. After this, when the land appeared to broaden off rapidly, and later, when it came nearly abeam, it was not difficult to determine, by observations and calculations that could have been made within a few minutes, the speed of the vessel being known, that the land was much nearer than the captain supposed it to be. If, as alleged, the lead could not there be used to advantage, a verification of the position of the ship by such calculations, when approaching land in the vicinity of dangerous coral reefs, seems to me a manifest duty. It is impossible to accept running upon a mere surmise of the distance of the land in the vicinity of such reefs, and neglecting either to bear away when the land was made, or to verify by a simple and easy observation and calculation its supposed distance, as a reasonable compliance with the obligations of prudent and careful seamanship. *Bazin* v. *Steam-Ship Co.*, 3 Wall., Jr., 229; *Richelieu & O. Nav. Co.* v. *Boston Marine Ins. Co.*, 136 U. S. 408, 10 Sup. Ct. Rep. 934; *The Montana*, 17

Fed. Rep. 377. Upon this ground, therefore, I must hold the vessel and her owners liable for the damages caused by the stranding.

It does not appear, however, that the owners were in any way privy to the faults that brought about the stranding. Neither the condition of the shaft, nor the adoption of the western route, was its proximate or efficient cause. The owners are therefore entitled to a limitation of their liability according to the provisions of Rev. St. §§ 4283–4287.

The ship and bills of lading, being both American, are governed by our law; and the exceptions of negligence on the part of the master, crew, etc., furnished no defense. The other clause in the bills of lading, as respects proofs of damages, becomes immaterial. If available as regards any particular claim, the question can be presented to the commissioner by any of the contesting creditors, and the necessary facts will then more fully appear. The damages provable against the fund will include the loss of the perishable cargo, made worthless by the delay, and thrown overboard, as well as the partial damage to what was brought into port; and also all the costs and charges attending the salvage of the cargo,—that is to say, its proper proportion of the aggregate cost and charges up to the time of its arrival here, as well as any further damage, if any, by reason of any difference in market price from the delay in arrival. The Giulio, 34 Fed. Rep. 909; The Belgenland, 36 Fed. Rep. 504; The Caledonia, 43 Fed. Rep. 681.

The charge of the salvage costs and expenses chargeable against the ship have been paid, as I understand, by the owners of the ship, or by her insurers; and, having been once deducted in ascertaining the appraised value of the ship, cannot be again presented as a claim against the fund in court for distribution. The sums properly chargeable against the cargo, as for general average incurred in these salvage expenses, are damages caused to the cargo by the stranding. They have no preference, so far as any facts before me would show, over any other claims against the ship or the fund in court, for any other kind of injury to the cargo brought into port, or for the loss of that which was thrown overboard. So far as appears at present, these claims all stand upon an equal footing as respects the distribution of the fund. If there are any circumstances that affect the equality of the various claims, they can be presented to the commissioner before whom the proofs in behalf of each creditor, or damage claimant, will now proceed. A decree may be prepared in accordance herewith.