PACIFIC MAIL STEAMSHIP CO. v. NEW YORK, H. & R. MIN. CO. et al.

APPLETON v. PACIFIC MAIL STEAMSHIP CO.

(District Court, S. D. New York. July 13, 1895.)

GENERAL AVERAGE—NEGLIGENT STRANDING—LIMITATION OF LIABILITY—CARGO INTERESTS UNAFFECTED—CONTRIBUTION BY SPECIE SAVED.

The steamer City of P. having been negligently stranded, and the steamer thereafter voluntarily flooded to prevent total loss from pounding before relief could be had; and the cargo being thereby damaged, but vessel and cargo ultimately saved, and the whole value of the vessel and the freight pending having been afterwards divided among the damage claimants upon a decree in proceedings to limit the owner's liability; and thereafter a general average adjustment being made as between the cargo interests, and libels thereafter filed upon the average bonds given on the delivery of the cargo: Held: (1) That the flooding was a general average act. (2) That neither the decree and distribution in the proceeding to limit liability, nor the exclusion of the vessel from participation in the general average, were any bar to the general average adjustment as between the cargo interests; and that due account having been taken in the average adjustment, of the decree and distribution, so as to equalize the cargo interests pro rata, the adjustment should be sustained. (3) That as the general average act was for the benefit of the whole adventure, including the specie on board, the specie must contribute in general average, although it was transshipped a week after the flooding, the transshipment being to another vessel of the same carrier, by which the specie was duly delivered upon the giving of an average bond, and the voyage not being broken up, nor any separation of interests intended by the transshipment.

Wing, Putnam & Burlingham, for Pacific Mail Steamship Co.

Mr. Cox, for Appleton.

Carter & Ledyard, for New York, H. & R. Min. Co. and others.

Butler, Stillman & Hubbard and Mr. Mynderse, for other respondents.

North, Ward & Wagstaff, for other respondents.

BROWN, District Judge. The above actions grew out of a general average adjustment made September 14, 1893, pursuant to average bonds executed in New York by different consignees of cargo, in July, 1888, consequent on the stranding of the steamer City of Para, off Old Providence Island on May 17, 1888. The steamer was bound with a general cargo from Colon to New York, but was got off and brought to this port. The accident was held by this court to have been caused through negligence; and the owners were held liable up to the value of the vessel and freight pending (44 Fed. 689). That amount was paid into court, and distributed pro rata among the damage claimants under a final decree entered February 24, 1893.

A sacrifice of cargo and salvage expenses having been incurred in rescuing the ship, the general average adjustment above referred to was made up, in which the cargo charges and allowances are equalized by making due account of the proceeds received under the decree in the limitation of liability proceedings. The vessel having been surrendered, and its proceeds distributed, the adjustment was made entirely between the cargo interests; the vessel not appearing either as debtor or creditor in the account.

The libel of Appleton was filed to recover the amount which the adjusters had stated and found due. The other eight libels were filed to recover the contributory amounts due from various cargo owners according to the general average adjustment, as above stated, and upon the bonds given therefor. The objections below considered were taken to these last demands.

1. The decree in the proceedings for limitation of liability by the owners of the City of Para, does not, in my judgment, prevent the operation of the principles of general average contribution, where in other respects the circumstances warrant it. Certainly no such effect is indicated, or could have been contemplated, in the act providing for a limitation of ship-owners' liabilities; and there is not the least equitable reason for giving the act any such effect by construction. The ship, in consequence of the negligence that brought about the stranding, and rendered necessary the general average act, not only forfeited all claim to share as a creditor in the general average distribution, but became liable to respond to the extent of her value to make good the losses of cargo owners. The two subjects are quite independent of each other, and I see no reason why it should make any difference in the final result, whether the general average adjustment was made after the distribution in the limitation of liability proceedings, or before such distribution. Had the adjustment been before decree and distribution of the proceeds of the ship, the ship's share would have been ordered distributed among the cargo interests. Being made since the decree, all that equity and justice require is that the adjustment shall be made with due account of the distribution under that decree, so that the burdens and losses shall be distributed pro rata, in conformity with the intention of the liability act and with the equitable principles of average adjustment. The evidence shows that in this case that has been done.

2. The objection that no adjustment of general average can be made without the admission of the vessel to participate, is an objection of form merely. The adjustment might have been made up in that form; and the vessel's share would then, in consequence of her negligence, have been distributable among the damaged cargo owners, with precisely the same result that this adjustment gives. See Strang v. Scott, 14 App. Cas. 601. To the same effect is the Maritime Code of Denmark (section 191).

3. The objection that the specie should not be held to contribute, on the ground that it was removed from the vessel before she was finally got off, ought not to be sustained in the present case. During the first 24 hours after the vessel stranded, various attempts were made to get her off the reef, but without effect. She was in a position where the total loss of ship and cargo, including specie, was threatened from pounding. To avoid pounding, and the danger of losing the entire adventure, the ship was flooded, and thereby steadied until the Merrit Wrecking Company from New York could send out the relief expedition by which the vessel was got off, and the cargo, though damaged, brought to this port. A week after the vessel was thus flooded, a chartered vessel, the Thames, procured by the agent of the steamship company owner, came to the reef and removed the mails, specie, and passengers, and proceeded with them to Colon, whence they were forwarded by the company's steamship Colon to New York. The specie remained all the time in the steamship company's possession until it was delivered upon the execution of the average bond in suit.

The flooding of the vessel was clearly a general average act, done in the interests of the entire adventure, including the specie. The damage to a portion of the cargo arose through this flooding. Not only was the act of flooding a general average act, but it was a part of the series of measures contemplated from the first for the preservation of all the interests as far as possible; and no separation of interests was intended, nor was the voyage broken up.

An abstract of the adjustment is as follows:

Contributory value of the cargo.................................$232,599.76
Allowance to cargo............................................... 112,722.63
Value of cargo, as it arrived in New York........................ 119,877.13
Value of specie and treasure transshipped........................  36,000.00
Value of cargo remaining on ship and brought in her (all except
  the specie).................................................  83.877.13

The case of The L'Amerique, 35 Fed. 835, and other cases there cited, in which an exemption from general average has been allowed in consequence of a separation of interests, seem to me not at all applicable to the facts of the present case. This adjustment is, therefore, sustained, and decrees may be entered accordingly for payment upon the bonds in suit, with costs.

In the case of Appleton, a decree may also be entered that the respondent pay to the libelant the amount due upon the adjustment, upon collection by respondent of the sums owing by the debtor interests, or pro rata for such amount as is collectible, with a reference to ascertain the amount, if the amount is not agreed upon.