PACIFIC MAIL STEAMSHIP CO. v. DUPRE.   SAME v. DE LIMA et al.
SAME v. CALIFORNIA VINTAGE CO.   SAME v. KOHLER et al.

(District Court, S. D. New York.   March 18, 1896.)

SHIPPING—GENERAL AVERAGE ACT—PARTICULAR INTERESTS NOT·SEPARABLE.
    After a negligent stranding on a reef, the ship was flooded, in order to steady her upon the rocks, to prevent pounding and consequent breaking up of the ship, the ship was thereby saved and the voyage completed; the libellant's casks of wine having been assessed in general average for the salvage operations in getting ship and cargo off.   *Held* that the wine was bound to contribute, inasmuch as the act of flooding was a general average act, designed by the master for the safety of the whole adventure, and was successful in preventing the breaking up of the voyage.    ·   .

In Admiralty—General average.

Wing, Putnam & Burlingham, for libellants.
North, Ward & Wagstaff, for respondents.
Wilmot T. Cox, for Appleton.

BROWN, District Judge.   The above actions were to recover against the respondents' cargo a general average assessment arising out of the negligent stranding of the steamship City of Para, near Old Providence Island on May 17, 1888.   The case has been several times before the Court; the last time upon claims for contribution similar to the present, which were adjudged in favor of the libellant. See Pacific Mail SS. Co. v. New York, H. & R. Min. Co., 69 Fed. 414. The view of the Court upon the evidence there presented, is stated as follows:

"The flooding of the vessel was clearly a general average act, done in the interests of the entire adventure, including the specie. The damage to a portion of the cargo arose through this flooding. Not only was the act of flooding a general average act, but it was a part of the series of measures contemplated from the first for the preservation of all the interests as far as possible; and no separation of interests was intended, nor was the voyage broken up."

The defendants in the present case were owners of wine in casks. The contention in their behalf is that the voluntary flooding of the ship by the master after she had grounded upon the reef could not be of any possible benefit to the defendants' part of the cargo; that the object of the master in flooding the ship, as stated by him, was to steady her in order to prevent holes being knocked through her bottom, or her stern being carried away or plates ripped up; that had the vessel not been flooded, and had these injuries to the ship happened, the vessel would have been flooded the same as was done by the master's voluntary act; so that this act of the master was done solely for the benefit of the ship, and consequently was not a general average act, which it is admitted must be an act done for the common benefit of ship and cargo.

This contention, however, fails to recognize properly one of the essential objects of the voluntary act of the flooding, viz., the preservation of the whole adventure from being broken up, which was thereby accomplished. The master states repeatedly that it was for the safety of all concerned. His expression on cross-examination "for the safety of the ship" was certainly not intended to mean the safety of the ship without the cargo. To knock out the stern, knock holes through the bottom, and to rip up the plates of an iron steamship would disable her from completing the voyage and break up the adventure. It is the master's right and duty to prevent such a disaster by all reasonable means. In this case his effort was successful; the adventure was preserved intact, the voyage completed, and the cargo brought by the ship to its destined port according to her contract. The defendants as owners of casks of wine not likely to be injured by the flooding of the ship, whether done voluntarily or through holes knocked in the bottom, are not entitled to separate their cargo from the general adventure. Their lots upon the shipment are cast in with the rest, and until a separation of interests is made, or the voyage is so near completion that in view of all the circumstances a separation is legally obligatory upon the master, the inquiry is not what particular act would be for the best interest of each particular part of the cargo separately, but what is best to be done to preserve the adventure as a whole, for the benefit of the whole. In cases of disaster in distant and comparatively unfrequented regions, it is as a rule far more to the interests of cargo that the adventure shall be saved and the cargo brought home by the ship, rather than to allow the voyage to be broken up, with the risks, delays, expense of salvage and storage, and the chances and expenses of re-shipment, if re-shipment be possible; after all which are paid, but little value may remain to the owner. The authority and duty of the master are based upon these considerations. In the present case the master's act saved all this cargo from the risks and expenses

attendant upon the breaking up of the adventure, and therefore, as it seems to me, falls within the general rule.

The charges in general average are, therefore sustained. Decrees accordingly.