## THE BÉRENGÉRE.

### (District Court, D. Oregon. August 12, 1907.)

### No. 4,726.

SHIPPING—DAMAGE TO CARGO—MEASURE OF VESSEL'S LIABILITY.

The measure of damages recoverable from a vessel for damage to a cargo of steel through its fault is the difference between the market value of the cargo at the port of delivery in its damaged condition and its value if it had been delivered in good condition, with interest from the time of delivery and other items of expenditure made necessary by reason of the damage. In such a case the shipper or owner cannot recover for loss of a profit he would have made by delivery of the steel on a prior contract of sale, which delivery was refused by the purchaser on account of its damaged condition; the vessel having no relation to such contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 485.]

In Admiralty. Suit for damage to cargo.

Certain steel was shipped on the barque Bérengére from Antwerp, in Belgium, to be carried to Portland, Or. The shippers, having received their bills of lading, indorsed them to Henry Lund & Co., the libelants, who were to deliver the steel to Robertson-Manning Company, on its arrival at destination, at the alleged invoice price of $3,656.20. The steel was damaged on the voyage by rust, from contact with salt water, concededly through the fault of the ship. Robertson-Manning Company, becoming aware of its condition, refused to receive the same, and negotiations were entered upon between libelants, the agents of the ship, and the underwriters of the cargo, looking to a settlement of differences arising on account of the damages sustained, resulting in the agreement as to the steel that it should be sold for what it would bring in the market, leaving other matters to abide further arrangement or the determination of the court. W. B. Honeyman became the purchaser at $2,750. Prior to the sale Honeyman had, at the instance of the underwriters, made a survey of the damages incident to the corrosion, and fixed them at the sum of $240. In his purchase he allowed the market value in Portland, less the amount of his appraisement, thus making the steel worth, in good condition, $2,990. The sale was not consummated until December 22, 1903, although the ship arrived in port some time in October previous; delay in the meanwhile being occasioned more or less by the negotiations pending for settlement of damages. Steel declined in the Portland market, between the day of shipment from Antwerp and the time of the ship's arrival in Portland, from $5 to $6 per ton.

W. C. Bristol, for libelant.
Williams, Wood & Linthicum, for respondent.

WOLVERTON, District Judge (after stating the facts). What measure of damages should be applied for the ascertainment of the amount of libelants' recovery? This is the principal question for determination. Proctor for libelants insists that the measure should be the difference between the invoice price libelants were to receive for the steel from Robertson-Manning Company and the amount paid therefor, in its damaged condition, by Honeyman. It is reasoned that the ship is liable in that measure because it is responsible for the damaged condition of the steel, and it was that condition that prompted Robertson-Manning Company to refuse to receive it. Upon the other hand, it is urged that the true measure is the difference between the market value of the merchandise in Portland at the time of the ship's arrival and the value thereof in its damaged condition.

It is a general rule, recognized both in this country and in England, subject to certain well-established qualifications, that anticipated profits prevented by the breach of a contract are not recoverable in the way of damages for such breach. The application of the rule, however, is not always the same in different jurisdictions. The grounds that go in support of it are ordinarily the dependency and contingency of that character of profits upon uncertain, variable, and changing conditions, their remoteness, and the omission of any engagement, either express or implied through contractual relations, to answer therefor. But where such anticipated profits are not contingent, uncertain, or remote, or where, from the express or implied terms of the contract or the special circumstances under which it was entered into, it may reasonably be presumed that they were within the intent and mutual understanding of the parties thereto, they constitute, by the consensus of judicial opinion, a proper measure for recovery in the way of damages for breach of the contract. Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147; Western Union Tel. Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479; Hockersmith v. Hanley, 29 Or. 27, 44 Pac. 497. This latter principle has been applied, as between carrier and shipper, where an unreasonable delay has been suffered by the carrier, and the contract of affreightment, through intendment, contemplated that the goods should be delivered for immediate sale in the market at destination. In such case the carrier is liable to the shipper for the decrease in the market value of the goods from the time they should have been delivered in due course. The Caledonia, 157 U. S. 124, 15 Sup. Ct. 537, 39 L. Ed. 644, affirming the decision of the Circuit Court to the same effect in 43 Fed. 681. "The liability of the vessel," says Brown, District Judge, in The Giulio (C. C.) 34 Fed. 909, "for the loss of a market during the period of negligent delay after the goods have been taken on board, has been often decided in the courts of this country." See, also, The Sammie (D. C.) 36 Fed. 568; The City of Para (D. C.) 44 Fed. 689. The rule, however, is otherwise where there has been no delay, and the cargo is damaged through fault of the carrier. In such case the measure of damages is the difference between the value of the goods in their damaged state and their value at the port of destination, had they been delivered in good order. Henderson & Gaines v. Ship Maid of Orleans, 12 La. Ann. 352; Western Manuf'g Co. v The Guiding Star (C. C.) 37 Fed. 641.

In this jurisdiction interest has been allowed on the measure from the time of delivery. The Nith (D. C.) 36 Fed 86. This as between the shipper and the carrier. But the ship's liability is not to be affected by private contracts between the shipper and strangers for the purchase and sale of the goods. The Compta, 6 Fed. Cas. p. 233, No. 3,070. The reasoning of Judge Hoffman in that relation is cogent and pertinent. He says:

"The shipowner by the bill of lading does not enter into any engagement with the owner of goods that may be damaged to go into a joint speculative operation founded upon the anticipated state of the market at some indefinite future time, to be judged of by the shipper, who retains in his own hands the whole conduct of the adventure. Such a rule would impose on the shipowner obligations and liabilities little suspected by persons engaged in that

business, and of which his contract by bill of lading contains no hint. The only safe, rational, and equal rule is to hold, as before stated, the vessel liable for the difference between market value of the goods, if sound, and their value in their damaged condition at the time and place of delivery."

These authorities leave nothing for me to add in the determination of this cause. The damages sought to be recovered were occasioned, not by delay, but by the failure to carry in good condition, and the rule applicable in determining the measure thereof is plainly the one last stated. The amount recoverable, therefore, is $240, with interest thereon at the rate of 6 per cent. per annum from October 1 1903, the date of the arrival of the ship in port. To this should be added other items of expenditure occasioned by the damage, namely: Moving steel on Columbia dock, $3.50; wharfage, $22.25; storage, $22.60; (The Giulio, supra); and also, I think, commission on sale of the steel, $68.75—making a total added of $117.10.

I disallow the item for telegrams and that for counsel fees, as being for the individual benefit of the libelants; also the items for premium occasioned by giving bond in court, $5.00, and court costs advanced, $18.20, because I assume they will be taxed, of course, following the decree in favor of the libelants.