### HEYE v. NORTH GERMAN LLOYD.[1]

*(District Court, S. D. New York.   November 30, 1887.)*

1. GENERAL AVERAGE—PASSENGER'S BAGGAGE—RIGHT TO BE CONTRIBUTED FOR.
    Passengers' baggage is to be contributed for in general average. Though reciprocity is the usual rule in general average as respects the right to compensation and the duty to contribute, there are well-established exceptions which include apparel and other articles attached to the person.
2. SAME—PASSENGER'S BAGGAGE—WHEN IT CONTRIBUTES.
    Passengers' baggage in daily use does not contribute in general average. Baggage stored in the ship's compartments, and not in use, does contribute.
3. SAME—FIRE IN BAGGAGE COMPARTMENT—DAMAGE BY WATER—SACRIFICE.
    The damage to cargo occasioned by water used to extinguish fire in a compartment of an iron steam-ship is a voluntary sacrifice and a general average charge, if the fire was such as to threaten the safety of the whole ship, if not extinguished. It is immaterial that the means to extinguish the fire were easy, if the use of those means involved the damage sued for.
4. SAME—DUTY OF MASTER TO TAKE AVERAGE BOND—FOREIGN CODES.
    Fire broke out on a steam-ship in a compartment used for the stowage of passengers' baggage. Water was introduced into the compartment, and in extinguishing the fire the trunks of libelant, a passenger on the steam-ship, were damaged by the water. On the completion of the voyage, no average adjustment was had, or average bonds taken. *Held*, that it was the duty of the master, in case of a loss, to cause an average adjustment to be made, and to

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

hold the cargo until the amount payable by each contributor is paid, or secured by a proper average bond. If the cargo is delivered to the various consignees without taking such bonds, an action lies, in favor of the persons entitled to the contribution, against the master, the ship, or her owners.

**5. SAME—REV. ST. § 4282.**

An action arising from independent acts of negligence on the part of the ship, and from the breach of a maritime duty, in failing to enforce a general average contribution, is not within the provisions of Rev. St. § 4282, exempting ship-owners from liability for damage to merchandise on board their vessels occasioned by fire.

In Admiralty.

This action was brought to recover for the damages to the contents of some of the trunks of the libelant and his family, who were passengers upon the respondent's steamer Ems, from Bremerhaven to New York, in October, 1886. On the night after the steamer left Bremerhaven, a fire, from some cause unknown, was discovered in the baggage compartment, where all the trunks were stowed. The steamer was stopped, and, by means of a fire hose introduced through a ventilator, the compartment was flooded with water, the fire extinguished, and a considerable part of the baggage, not touched by fire, was injured by the water. Upon arrival at New York, no general average adjustment was had, and the cargo was delivered to the consignees without payment of any general average contribution for the damages from water. The libel charges that the respondents are therefore liable for the amount which they should have collected for the damage occasioned by the water, excluding all that was touched by fire. The respondents contend that the damage was not a general average charge.

The Ems was divided by bulkheads into various compartments. The baggage compartment was a longitudinal one, situated over the boiler, and running along one side of the ship; about 50 feet long, 7 feet wide, and 12 feet high, and enclosed in iron, which was cased with two layers of wood, with spaces between them and the iron. From one-third to one-half of the wood-work on one side of the compartment was more or less burned and charred before the fire was extinguished; in two or three small places the wood was just burned through. The fire was discovered through the smoke issuing from the compartment; and the staterooms above were so filled with smoke as to drive out the occupants.

*R. D. Benedict,* for libelant.

*Shipman, Barlow, Larocque & Choate,* (*Wm. G. Choate,*) for respondent.

BROWN, J. It is urged that, considering the division of the ship into iron compartments, and the easy means of putting out this fire, there was no such common danger, or similarity, or substantial equality of danger between the baggage and the cargo, as makes justly applicable the rules of a general average contribution. Upon the evidence, however, no doubt, as it seems to me, can be entertained that the fire in the baggage compartment did threaten the safety of the entire ship. The situation of the compartment over the boilers; the considerable progress of the fire in the compartment; the proximity of the wood-work of the deck and other parts of the ship, and their warm and inflammable con-

dition,—were such that it is impossible to suppose that the fire might safely have been left to burn itself out in the baggage compartment without danger of being communicated to the rest of the ship. On the contrary, had no attempt been made to put out this fire, I think it certain that the fire would have destroyed both ship and cargo. In that sense, the danger was imminent, and threatened every part of the ship alike. The fire could not be put out except by the use of water or steam, and water was the least injurious. But, as the flooding of the baggage compartment could be easily effected, the actual danger of the whole ship, taking into account this means of prevention, with its necessary attendant sacrifice of the contents of the baggage compartment, was not, indeed, great. But the question as respects general average is not, what was the extent of the danger, supposing this sacrifice to have been made; but what was the danger if this sacrifice should not be made? And in the latter case there can be but one conclusion,—that the danger was great and common to all, and that the sacrifice was necessary.

1. The damage done by water used in putting out a fire to goods not touched by the fire itself is almost universally held a common charge, as being within the ordinary principle of general average, viz., that "a loss voluntarily incurred for the sake of all shall be made good by the contribution of all." Per Story, J., *Insurance Co.* v. *Ashby*, 13 Pet. 338. Such are the provisions of many maritime codes, (see Gourl. Gen. Av. 159–165;) and, in the absence of any express statute, the same has been held in this country, in France, and in England. 2 Pars. Mar. Ins. 234; Benecke, Ins. 165; *Nimick* v. *Holmes*, 25 Pa. St. 366, 373; *Nelson* v. *Belmont*, 5 Duer, 310; *Lee* v. *Grinnell*, Id. 400, 427; Gourl. Gen. Av. 160–164; Desjardin, Traite de Droit Com. Mar. §§ 994, 995; Valroger, Droit Mar. § 2047; *Stewart* v. *West India, etc.*, L. R. 8 Q. B. 88, 94; *Wire Co.* v. *Savill*, 8 Q. B. Div. (1882,) 653. By the two cases last cited this rule as respects cargo is established as the law of England, contrary to the former practice of the English adjusters. Flooding a compartment to extinguish fire is equivalent, *pro tanto*, to scuttling a ship without compartments for the same purpose; and all water damage is generally treated as analogous to scuttling, as respects the right to contribution. It is also analogous to damage inflicted on other goods by wet in course of a jettison, which Beawes, more than a century ago, (Lex Mercatoria, 148,) said comes into general average.

It is urged that the contents of the baggage department were already doomed; that, except in so far as they could be partially saved by flooding the compartment with water in order to extinguish the fire, their destruction was certain; that the goods in question had therefore no real or practical value, save their value wet, and that hence there was no real sacrifice, and therefore no just claim for contribution.

The question what is to be deemed such a "sacrifice" as to entitle the owner to a general average contribution has not infrequently arisen. Substantially the same question is presented in almost every case where the fire is put out by water, and unburned goods, near the fire, are damaged by wet. The very use of water presupposes that the goods adjacent to

the fire must be either damaged by the continuance of the fire, or by the water used to put it out. The adjudications above cited, in determining that damage from wet should be paid for as general average, determine also, by necessary implication, that the certainty of the prospective injury by either fire or water does not prevent the application of the rule of general average. Substantially the same question arises in the cases of a voluntary stranding of a vessel that cannot be saved, in order to preserve the cargo, though the ship must be lost. In the case of *The George*, Olcott, 89, 97–101, this objection was overruled by BETTS, J.; and in the case of *Barnard* v. *Adams*, 10 How. 270, 303, the objection, in the very form now urged, was carefully considered by Mr. Justice GRIER, who, after saying that the objection was in reality "that, if the common peril was of such a nature that the *jactus*, or thing cast away to save the rest, would have perished anyhow, * * * there can be no contribution," says:

"If this be the meaning of this proposition, and we can discern no other, it is a denial of the whole doctrine upon which the claim for general average has its foundation. For the master of the ship would not be justified in casting a part of the cargo into the sea, or slipping his anchor, or cutting away his masts, or stranding his vessel, unless compelled to it by the necessity of the case, in order to save both ship and cargo, or one of them, from an imminent peril which threatened their common destruction. The necessity of the case must compel him to choose between the loss of the whole and part; but, however metaphysicians may stumble at the assertion, it is this forced choice which is necessary to justify the master in making a sacrifice, as it is called, of any part for the whole. [Page 304.] * * * The *jactus* is said to be sacrificed, not because its chance of escape was separate, but because of its selection to suffer, be it more or less, instead of the whole, whose chances of safety, as a whole, had become desperate. The imminent destruction of the whole has been evaded as a whole, and part saved, by transferring the whole peril to another part. [Page 306.]"

According to the best considered cases, the loss will be deemed no "sacrifice" in those circumstances only in which the property sacrificed must inevitably, or at least in all probability, be lost, not through the *common* peril, but owing to some situation or condition peculiar to itself, and independent of the common danger, and whether the vessel and the rest of the cargo survive or not. Thus, in *Shepherd* v. *Kottgen*, 2 C. P. Div. 585, the mainmast, before the giving way of the rigging in a heavy gale, was lurching dangerously, and liable to cause the ship to founder; it would not break, and was therefore cut away. The jury found that the mainmast, in its condition immediately before it was cut away, was "hopelessly lost," that is, lost whether the vessel survived the gale or not. It was held upon much consideration to be no sacrifice, and contribution was refused. Lord Justice BRAMWELL says:

"When the thing destroyed has some peculiar condition attached to it, so that it will be lost whether the whole adventure is saved or not, then the destruction cannot be deemed a sacrifice."

Lord Justice BRETT says:

"If anything on board a ship which is cut or cast away because it is injuring the whole adventure is in such a state or condition that it must itself cer-

tainly be lost, although the rest of the adventure should be saved *without* the cutting or casting away, then the destruction of the thing gives no claim for general average."

COTTON, L. J., says:

"When the thing said to have been voluntarily abandoned or destroyed is in such a state, by reason of a peril peculiar to itself, that, if the act of supposed sacrifice had not been done, it would have very shortly been destroyed, *without the rest of the common adventure being lost*, the act of slightly hastening the moment of loss is not an act of sacrifice which enables the owner of the thing to claim contribution. There is no act of sacrifice. Within a short time the thing would have been lost *by a peril peculiar to itself*, and independent of the common peril to which the whole adventure is exposed."

This is precisely in accord with the general tenor of the opinion in the case of *Barnard* v. *Adams*, *supra*, and on this principle contribution was denied by this court in the case of *The Adele Thackera*, 24 Fed. Rep. 809; *Slater* v. *Rubber Co.*, 26 Conn. 128. On the other hand, where the special danger is only a circumstance in the common peril to which the whole adventure is exposed, and the sacrifice was made in preserving the rest from the common peril, contribution is sustained. *Johnston* v. *Chapman*, 19 C. B. (N. S.) 563, 585; *The Margarethe Blanca*, 12 Fed. Rep. 728.

In this case there was no danger to the trunks save the danger from fire, which was the common peril of the whole adventure. Unless the fire were suffered to extend to the whole ship, it must have been put out by water or steam. At whatever stage they began to put it out, whether in the first compartment or in the second, some of the goods nearest the fire must have been damaged by water. It was to the interest of the whole adventure that the work of putting out the fire should be begun and ended as soon as possible. The sacrifice of the trunks in the baggage compartment prevented a greater sacrifice afterwards, unless the fire were to be allowed to run its course, and destroy the ship and cargo. The contents of separate compartments cannot be treated as separate adventures, when the danger is one that threatens them all, unless sacrifices are made to avert it. When something must be sacrificed to save the rest, it can make no difference, as respects the right of average contribution, how near, or how remote, from the fire, the goods sacrificed may be, provided the sacrifice is necessary for the common good, and is an effectual means of saving the rest.

2. It is further urged that the libelant is not entitled to compensation, because by the law of this country passengers' baggage cannot be called on to contribute in general average; and that there can be no equity or right to compensation where there is no reciprocal obligation to contribute.

Reciprocity is undoubtedly the ordinary rule in general average. It is, however, rather a circumstance in the usual application of general average than an indispensable part of the principle upon which the right of general average contribution is founded. That principle, as before stated, is the simple equity that "a loss voluntarily incurred for the sake of all shall be made good by the contribution of all." This, for the most

part, involves reciprocity of right and obligation, and by the old law *all* were bound to contribute. But special reasons might exist why a class of articles that share in the common benefit might not be called on to contribute; and such a case would form an exception merely to the universality of one branch of the rule, without furnishing any just reason why similar articles in another case should not be paid for when they had been voluntarily sacrificed as a means of saving all the rest. A few such exceptions are well established, in which no reciprocity exists. Thus cargo on deck must contribute, if saved, though it may have no claim to compensation if jettisoned. It is the same with goods put aboard without the master's knowledge, and without a bill of lading. 1 Pars. Shipp. & Adm. 185, 307, 322; Code de Com. § 420; German Code, § 732; 2 Valin, Ord. 519; Netherlands Code, § 732; Italian Code, § 649. On the other hand, the clothes of seamen, munitions of war, and, usually, provisions of the ship for use on board, do not contribute; though they are paid for if sacrificed. The reason assigned for excepting seamen's clothes is, not only the favor accorded to seamen by the modern law from their necessitous condition, and in order that they may not hesitate in sacrificing what is necessary through any fear of personal loss, but on account of their necessary exertion in connection with the special peril. Provisions do not pay, because contribution is based upon the value of articles at the close of the voyage; and provisions are for consumption during the voyage. If, therefore, it were the settled law of this country that passengers' baggage should not contribute, that would not necessarily determine that such articles should not be contributed for when sacrificed for the common safety. The grounds of exemption must be considered, or the right to compensation be determined as an independent question.

As respects the obligation of passengers' baggage to contribute in general average, no adjudication in this country or in England has been cited by counsel; nor have I been able to find any. In Abbott on Shipping, (503,) it is said: "Neither in this country do the wearing apparel, jewels, or other things belonging to the persons of passengers or crew, and taken on board for their private use, contribute." Kent in his Commentaries (volume 3, *241) repeats this as the law of England. It would seem to rest upon the practice of average adjusters, which, as just seen, does not determine the law. *Whitecross* v. *Savill, supra.* 1 Pars. Shipp. & Adm. 322, 323, and note, refers to the practice but sees no reason for it on principle.

The question has been much discussed by many of the continental authors. Most of the ancient authorities are cited by Emerigon, (Tr. des Assur. vol. 1, pp. 642, 646.) By the Rhodian law, everything saved contributed, even to the ring upon the passenger's finger. The same is the rule of Le Guidon, *c.* 5, art. 626. Cleirac (p. 263) says it depends upon the usage of each country, and adds (p. 45, note 27,) the usage then was that the clothes and articles that the passengers or merchants *ordinarily wear upon them* did not contribute. The Ordinance of Philip II. (1563) exempted from the duty of contribution articles of daily wear,—

clothes in daily use. The French ordinance of 1682 exempted the clothing of sailors only; saying nothing of the clothes of passengers. Emerigon (p. 645) says that he "had never seen the clothes, jewels, money, or trunks of passengers compelled to contribute; such things being considered as accessory to the person. But, if the question was raised, he thinks the judge would not be permitted to depart from the provisions of the ordinance." "The trunks of passengers," he continues, "jettisoned for the common safety, are paid for; why, if saved, should they be exempted from contribution? Merchants and passengers do not enjoy the favor accorded to the sailor; consequently nothing changes as to them the reciprocal obligation of the general rule." Pothier (Contract Marit. II. 125) decides that they should contribute. The ordinance of Wisbuy (article 42) provides that "if any one has money in his chest, let him take it out, and carry it about him, and he shall pay nothing;" evidently implying that otherwise it must contribute. Jacobson's Lex Mercatoria, (1729,) p. 138, makes the same distinction, and observes that "money, jewels, and clothes, except such as are borne upon a man's body, are not exempted." Beawes, in Lex Mercatoria, p. 148, says that all must contribute, "even money, jewels, clothes," etc.; "but a man's apparel *in use*, and victuals put aboard to be spent, are totally excluded from contribution." Pardessus (Cours de Droit, vol. 3, p. 224) says that "the clothes and jewels which passengers have upon them, and which are not put aboard as merchandise, do not contribute." Valin, in his commentaries on the Ordinance, (livre 3, tit. 8, subd. 11, vol. 2, p. 517,) says that the exemption of clothing "is to be understood only of that which is worn daily, and the changes of linen for the voyage, as well as ornaments and jewels that are habitually worn upon the person, and not those which are put on upon the precise occasion of the jettison; there being no doubt that in that case the clothes not in daily use, with trunks and boxes and other effects, would be held to enter into contribution." Further on (page 518) he continues:

"As they [the passengers] are only exempt from contribution for their ordinary apparel, it would be necessary to make a valuation of that separate from their other apparel; that is, if their ordinary apparel jettisoned is estimated at 1,500 liv., and the other at 2,000 liv., they shall not contribute to the whole loss, only for the 2,000 liv., and be exempt for the 1,500 liv. like the seamen."

The French Commercial Code, art. 419, like the Ordinance, makes no express provision in regard to passenger's baggage. Boulay-Paty, (Cours de Droit, tit. 13, § 2, vol. 2, p. 265,) after stating the French custom not to require contribution from passengers, quotes the opinion of Pothier that passengers ought to contribute for their clothes and jewels, and then adds:

"Nevertheless, if it appears that the judges could not in this regard depart from the provision of the law, [not exempting passengers' baggage,] it would seem to us just to make a distinction, and to reserve for each passenger without contribution the clothes and jewels that he habitually wears, but as for his trunks and other baggage, to make them contribute; because, if these objects were jettisoned for the common safety, they would have to be

paid for by contribution. It cannot be said, moreover, that the passengers enjoy the favor accorded to the sailors; consequently nothing changes, as regards them, the reciprocal obligations of the general law."

He adds that "it is incontestible that trunks or other baggage, if jettisoned, enter into contribution to be paid for."

From the extracts last quoted it is evident that the passage cited by counsel from Kent's Commentaries, (volume 3, p. *241,) in which it is said that Boulay-Paty thinks that passenger's baggage "ought to be exempted, and that the existing French usage is proper," is quite erroneous and misleading, except as regards the comparatively unimportant item of clothes in daily use, or necessary changes during the voyage; and that as regards trunks put, like these, in a baggage compartment for transportation, and not for use during the voyage, the high authority of Boulay-Paty, Valin, Pothier, and Emerigon is strongly to the contrary. Phillips concludes that "no reason has been given why passenger's baggage should not contribute as a part of the contributory interest; and Parsons says the same. 2 Phil. Ins. 153; 2 Pars. Shipp. & Adm. 322. Desjardins, a member of the French court of cassation, in his treatise (1885) on Maritime and Commercial Law, (volume 4, p. 472,) concludes that "what the passenger wears upon his person should be exempted, like the clothes of seamen, on the ground that the general average loss, while it may have saved the ship and the cargo, does not determine necessarily the preservation of the persons on board;" "nor, consequently, of what is accessory thereto." Beyond this he "does not hesitate to hold that the trunks of passengers should contribute."

By the express provisions, however, of the great majority of the recent Maritime Codes, the baggage of passengers does not contribute; but, if sacrificed, it nevertheless must be paid for in general average. German Code, art. 725; Belgian Law 1879, art. 106; Italian Code 1882, art. 648; Code of the Argentine Republic, § 1502; Turkish & Egyptian Code, art. 261; Norwegian Code, art. 76; Danish Code, § 242. The New Code of Spain, (1885,) art. 856, exempts passengers' clothes or wearing apparel in use. By the Code of Chili, (article 1096,) wearing apparel and effects of passengers are exempted, not exceeding in value and in kind those of the master that he is entitled to reserve. The Swedish Code (article 163) exempts the clothing and other articles of passengers not constituting a mercantile venture, (*une pacotille.*) By the Brazilian Code, (article 787.) baggage for the personal use of passengers is exempt. The Code of the Netherlands (article 731) exempts the "daily clothes" of the passengers. The Code of Finland (article 147) exempts "the effects of passengers, except what may be regarded as forming a part of the cargo and freight, and whatever a person wears and himself saves." Desjardins, *supra,* vol. 5, pp. 475–484; Gourl. Gen. Av. 586, 597; Ulrich, Haverei-Gesetze, (1884.) The author last cited, in commenting (page 17) upon the provision of the German Code (section 725) that exempts passengers' baggage from contribution, without qualification, observes:

"*Passengers' Traveling Effects.* It seems reasonable that those effects intended for the personal use of the passengers should **not** contribute that are

taken with the passenger into the cabin, or that are kept in another part of the vessel, without any special compensation besides the passage money. Article 673. However, if these same effects pay a special freight so that they partake more of the character of general cargo goods, then they must also contribute. The provision of article 725 seems not to conflict with this, because by it only the regular case of article 673 is intended to be met."

By the provisions of all the maritime codes, the clothes and baggage of passengers, like the clothing of sailors, munitions of war, and provisions for the ship, though not called on to contribute, must, as I have said, be paid for if sacrificed for the common good. So, in the absence of any express statutory provision in regard to passengers' baggage, as in France, the same right to compensation is affirmed by the highest authorities as an undoubted right. This right seems never to have been anywhere questioned; and it is plain that such articles, when sacrificed for the rest, are within the principle of general average as much as any other property on board.

Considering, then, the undoubted universal rule to pay for baggage sacrificed, and the quite general exception of such articles from assessment, it is necessarily to be inferred that this exemption is based upon grounds that do not affect the justice and the equity of compensation for such articles when sacrificed for the rest, though they may not be called on to contribute when saved. The reasons for this exemption in the case of passengers' baggage, I have not found stated any further than its insignificance, as Loundes suggests, and the reason above indicated, viz., that what is upon the person is not subject to the same risk that attends the cargo, and may be saved with the person though the cargo be lost; but that suggestion would apply only to what is strictly attached to the person, not to trunks in the baggage compartment. But, aside from that, when we consider how great annoyance and inconvenience to passengers would attend the long detention of their trunks and clothing until a general average adjustment could be had, or an average bond be given; the practical impossibility of either, where passengers with their baggage are taken on and off at intermediate ports in the course of the voyage; the difficulties attending the valuations to be put upon such articles in average adjustments, and in the collections thereon; the inquisitorial and offensive nature of such examinations; the small value of many of such packages, such as those of steerage passengers; the insignificant sums to be derived from most of the trunks and boxes, often, perhaps, less than the cost of adjustment; and the difficulty of making any distinction in the mode of dealing with the baggage of the different classes of passengers, and the natural desire to accommodate travelers in the rivalries of competing lines,—in all these considerations there seem to be practical reasons enough, without reference to the legal right, to have led, first, to the omission in practice of any assessment on passengers' baggage, and, next, to the adoption of that practice in many of the recent Codes. Whether this be the true account of the matter or not, in the light of the above authorities, and the general usage of maritime nations, it is clear that the absence of reciprocity in the right to compensation and the obli-

gation to contribute, is not sufficient to exclude passengers' baggage from compensation. The same authorities show, as it seems to me, that by the general maritime law, aside from the provisions of recent codes, the only baggage exempt is apparel, and such other articles as the passengers wear, with the usual changes for the voyage, and such as they actually take with them for use, which in that sense are attached to their persons; not trunks delivered into the exclusive charge of the ship, and which are neither in use, nor in the passengers' possession, during the voyage.

The modern codes above cited differ as to the extent to which this exemption is allowed. Where, as in this country, there is no statutory provision on the subject, and no adjudication, the omission of the baggage from assessment, beyond that actually in possession of the passenger, and in use on the voyage, must be regarded as a favor or courtesy to passengers, or as being a waiver for practical reasons, rather than a strict legal right to exemption under the general maritime law; unless, indeed, the practice not to detain and hold baggage for a general average adjustment were proved to have been so long settled and acted upon as to form one of the implied terms and conditions upon which passengers embark. Though such a practice, if established and well understood, might possibly entitle the passenger, in cases of a general average loss, to a delivery of his baggage without detention, it would not relieve him from the obligation to contribute by a *pro rata* deduction, according to the usual rule in general average, upon the amount allowed to him for his particular loss, when the passenger himself is seeking compensation; because in that situation none of the practical reasons for omitting passengers' baggage from assessment are applicable. Upon this point I follow the principles universally affirmed, and the united authority of the French authors above cited; and as none of these trunks were in daily use, or "attached to the person," I shall hold them bound to contribute, when the owners are seeking compensation, as in this case, by a *pro rata* deduction according to the general average charge, as in the example cited by Valin, *supra*, vol. 2, 518. This accords also with the express provision of the German Code, art. 725, subd. 3. And see 5 Valroger, Droit Mar. §§ 2198, 2199.

3. Section 4282, Rev. St. U. S., does not, in my judgment, exempt the respondent from liability in this case. It provides that "no owner of any vessel shall be liable to answer  \*  \*  \*  for any loss or damage which may happen to any merchandise whatsoever which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel," etc.

Whether the trunks of passengers which, like these, are not taken into the cabins, or retained in their own charge, but are put in the exclusive charge of the ship, until they are delivered to the passenger upon the dock, at the end of the voyage, and in the mean time are stowed in a separate compartment of the ship, like any other merchandise, are or are not included in the words of the statute, "any merchandise whatsoever," is a somewhat difficult question. See *The Marine City*, 6 Fed.

Rep. 413; *The Garden City*, 26 Fed. Rep. 766.    It is not necessary to consider that question here; nor the further question whether the statute intends only the *direct* damage from fire, and not the damage that happens only indirectly "by reason of the fire," but directly and solely by water, through the voluntary act of man in putting it out; nor whether congress, in passing this statute, could have intended to modify the law of general average contribution so as to exempt the ship herself from paying her own *pro rata* share of the value of another's property voluntarily sacrificed by the master for the ship's own benefit;—for the *gravamen* of this action is the negligence of the ship in making delivery of the cargo without any general average adjustment, and without requiring payment, in part for the libelant's benefit, of any general average contribution.

By the maritime law it is the duty of the master, as the representative of the interests of all, upon the completion of the voyage, to cause an average adjustment to be made, and to hold the cargo until the amount payable by each contributor is paid, or secured by a proper average bond.    If this duty is not performed, and the cargo is delivered to the various consignees without requiring payment of their shares, that constitutes a breach of a maritime obligation, for which an action necessarily lies in favor of the persons entitled to contribution against the master, the ship, and her owners, to recover the amount of the average, which the latter were bound to enforce, but did not.    2 Marsh. Ins. 544; Id. (5th Ed.) 433; Gourl. Gen. Av. 433; *Dike* v. *The St. Joseph*, 6 McLean, 573; *Gillett* v. *Ellis*, 11 Ill. 579; *Eckford* v. *Wood*, 5 Ala. 136; *Strong* v. *Insurance Co.*, 11 Johns. 323, 334.    The persons entitled to compensation might, indeed, pursue the cargo, or the several consignees, if they could trace them; but the master and owners of the vessel have no right to throw that burden upon those whose property has been sacrificed for the common good.    Having improperly and negligently, as respects the libelant, delivered the cargo without exacting contribution, they must respond for the amount, and themselves bear whatever trouble or expense may attend a resort to the various consignees who still remain liable. Such an action, arising from independent acts of negligence on the part of the ship, and from the breach of a maritime duty, is not within the provisions of section 4282, Rev. St.

The libelant is therefore entitled to a decree, and to an order of reference to ascertain the amount due, if not agreed on.