## THE AGATHE.

### MARTIN v. THE AGATHE.

(District Court, S. D. Alabama. January 10, 1895.)

### No. 685.

VOLUNTARY PAYMENTS—SHIPPING—GENERAL AVERAGE CLAIM.

Money paid by the consignees of the cargo to the master upon a wrongful claim for general average, and reimbursed to the consignees by the consignor, cannot be recovered by the latter from the ship, if the payment by the consignees was voluntary. But it may be recovered if the payment was made for the purpose of getting possession of the cargo.

This was a libel by William H. Martin against the bark Agathe to recover money alleged to have been illegally exacted from libelant's consignees upon a wrongful claim for general average, and for which he had reimbursed them.

Gregory L. & H. T. Smith, for claimant.
Pillans, Torrey & Hanaw, for libelant.

TOULMIN, District Judge. It appears from the libel that it is filed to recover damages for breach of contract; the contract being a charter party and bill of lading thereunder, made by the owners and master of the vessel, in which contract it was stipulated and agreed that the vessel was to transport and deliver the cargo provided for to the consignees, at Dundee, Scotland, on payment of freight. The breach alleged is that the master of the vessel failed to faithfully perform his part of the said contract, in that he wrongfully extorted from the consignees a large sum of money upon a claim of general average. It is alleged that the cargo was sold to the consignees at Dundee, and that the burden of paying all costs and charges of its carriage and delivery rested upon the libelant, and that the master of the vessel was informed of this before he sailed from the port of Mobile,—the port of loading. It is further alleged that the claim of general average was unjust and wrongful, and the circumstances under which said claim arose are shown, whereby it appears to have been unjust and wrongful. It also appears from the libel that at the time the cargo was delivered to the

consignees a general average bond was demanded of them, and they were requested to pay a sum of money as due upon said general average claim. It appears that said sum of money was paid on January 29, 1894; but it does not appear whether it was paid at the time of the delivery of the cargo, or was subsequently paid, it not appearing from any specific allegation in the libel whether the general average bond was or was not given. It is alleged that the payment of the money was not voluntary, and was made by the consignees only as the price of receiving the cargo from the vessel. The libel further alleges that the libelant was required by the consignees to pay to them, and that he did pay to them, the sum of money paid by them to the vessel in order to obtain the cargo from it, and this sum the libelant claims is the damage he has sustained in the premises.

This, as I understand it, is the substance of the case made by the libel. It seems to have been filed on the theory that the libelant's contract was that the vessel was to deliver the cargo to the consignees on the payment of the freight, and that the vessel refused to deliver the cargo on the payment of the freight alone as it contracted to do, but claimed, demanded, and received a certain sum of money as a further consideration or price for the delivery of the cargo. The case, however, was argued as if the suit was for money had and received by the master of the vessel for the use of the libelant. The contention of the libelant was that the money sued for was wrongfully exacted from him, and was paid under compulsion to the ship, and that, in equity and good conscience, he was entitled to receive it back. The contention on the other side was that the money was paid to the ship voluntarily by Fleming and Barry, who were the consignees of the cargo, and who were the libelant's agents for the purpose of paying all charges and freight on the cargo, and that the libelant ratified and confirmed such payment by voluntarily repaying or reimbursing Fleming and Barry the amount so paid by them. I do not know which, on the facts of the case, is the correct theory, but my opinion is that, on either theory, if the payment by Fleming and Barry was voluntary, the libelant cannot recover. But I am not informed as to the facts of the case further than they appear from the allegations of the libel, and I am unable to say from them that the payment was voluntary. The libel is somewhat ambiguous in its averments of facts, but it does aver that the payment was not voluntary, and that it was made under compulsion to enable the consignees to obtain possession of the cargo. Whether the payment was made at the time of the delivery of the cargo, or was subsequently made under a general average bond given on the delivery of the cargo, does not clearly appear. But, as I have said, it is alleged that the payment was made under compulsion, to enable Fleming and Barry to obtain possession of the cargo.

The exceptions admit the allegations of the libel to be true for the purpose of this hearing, and, as I understand these allegations, I think the exceptions should be overruled; and it is so ordered.

(May 27, 1895.)

If a party has in his possession goods or other property belonging to another, and refuses to deliver such property to that other, unless the latter pays him a sum of money which he has no right to receive, and the latter, in order to obtain possession of his property, pays the sum, the money so paid is a payment by compulsion. Lonergan v. Buford, 148 U. S. 591, 13 Sup. Ct. 684. But a payment is not to be regarded as compulsory, unless made to emancipate the person or property from an actual and existing duress imposed upon it by the party to whom the money is paid. 148 U. S. 590, 13 Sup. Ct. 684. The ship delivered the cargo to the consignees in good order, free from any lien or incumbrance. She asserted a claim against the cargo for a proportionate amount of salvage or loss which she had incurred when in distress by stranding,—a claim of general average;' but it does not appear from the evidence that she sought to compel payment of this claim by any duress of property. To any action on such claim, whether backed by a general average bond or not, negligence causing the stranding would be a full defense. There is nothing to show any concealment or misrepresentation on the part of the ship, or that the libelant did not have full knowledge of all the facts attending the stranding. Having paid the ship's claim for contribution voluntarily, with the facts before him, he cannot now insist that the ship shall repay it to him upon the theory set up. Phipps v. The Nicanor, 44 Fed. 504. The rule is well settled that the payment of a money demand made voluntarily, and with knowledge of the facts, and not in consequence of any fraud, misrepresentation, or mistake, nor under any duress or apprehension of person or property, is binding, and cannot be recovered back. A known defense in such cases must be made before payment. The Nicanor, supra; Radich v. Hutchins, 95 U. S. 213.

If, at the time of the payment by Fleming and Barry, the cargo owners (whether libelant or Fleming and Barry) were under no legal liability to pay any salvage contribution, because the stranding arose from the negligence of the ship, then there was no legal damage, and the payment would be voluntary in the legal sense, and cannot be recovered back. The ship had a lien upon the cargo for such contributory share as, under the facts of the case, the cargo owners might be bound to pay; and, if the ship had required payment of such share before delivery of the cargo, the owners could have recovered back the sum paid, in order to have obtained their goods, upon proof that the stranding was from negligence. But there is no such detention of the cargo proved. It was delivered upon the execution of the usual average bond. Any possible lien upon the cargo was thereby discharged, and thereafter the only existing claim against the cargo owners was a money demand, according to the terms of the bond, for such sum, when adjusted, as might be shown to be a charge upon the cargo. If, as the libelant alleges, the stranding was caused by negligence, then no charge upon the cargo existed in favor of the ship for any salvage, or for contribution towards the salvage award that she had paid. Such negli-

gence would have been a perfect defense to any action which the master or owners of the ship might have brought either against the goods in rem before delivery or against the owners in personam upon the average bond. The bond stands as a substitute for the cargo. It does not commit the cargo owners to the payment of the sum adjusted, whether justly owing or not. It is not to be construed as a submission to arbitration before the adjuster. It does not preclude the cargo owners from any legal defenses against the payment of salvage apportionment, wholly or in part. It was perfectly competent for them to show that, by reason of the ship's negligence, neither the ship's owner nor her agents could recover anything on the bond. As the facts constituting the alleged defense were known at the time of the payment by Fleming and Barry to the ship, and by the libelant to Fleming and Barry, the libelant was bound to avail himself of this defense at the time; and, having paid without any duress or constraint, the payment was voluntary, and the libelant is, in my opinion, barred from a recovery back. The Nicanor, 40 Fed. 366. The libel must therefore be dismissed; and it is so ordered.