# THE STRATHDON.

(District Court, E. D. New York. April 29, 1899.)

1. SHIPPING—CONTRIBUTION IN GENERAL AVERAGE — LIABILITY OF CARRIERS.
   The fact that the owners of a vessel cannot maintain an action against the owners of the cargo for contribution in general average for the ship's loss by fire because the fire was caused by the negligence of one of their crew, which is imputable to them, does not protect them from a similar action by the owners of the cargo for contribution.

2. SAME—EXCLUDING LOSS TO SHIP.
   Although the owners of a vessel have been adjudged exempt from liability for damage to the cargo resulting from a fire due to the negligence of one of the crew, under section 3 of the Harter act, on the ground that they exercised due diligence to make the vessel seaworthy and in fit condition for the voyage, and were without personal negligence or fault, they cannot maintain an affirmative action against the owners of the

cargo ror contribution in general average to the ship's loss; but where they are invited to such an adjustment by an action brought by the sole owner of the cargo, the ship's loss must be taken into consideration, as the effect of excluding it would be to make the same act for which they are acquitted of responsibility by the statute the basis of an indirect recovery of a part of the damage which was in issue in the direct action.

This is an action by the sole owners of the cargo of the steamship Strathdon to recover contribution from the ship owners to damage to the cargo resulting from a fire on the vessel during the voyage.

Black & Kneeland, for cargo owners.
Convers & Kirlin, for the Strathdon.

THOMAS, District Judge. On November 1, 1893, the ship Strathdon, bound from Java to New York, while passing through the Suez Canal, was set on fire between decks by the overheating of the donkey boiler, through the neglect of the man in charge thereof, and without the personal negligence of the ship owners. The means employed to extinguish the fire caused the losses which are the subject of adjustment in this action, which is brought by the owners of the cargo, which is a single interest, to recover contribution from the ship owners. The facts are fully stated in the action between the same parties, involving the question of the carrier's liability for the whole loss. See 89 Fed. 374. In that action the court adjudged that the claimants were free from negligence and liability. The present questions come up on exceptions to the report of a special commissioner, to whom all the issues in this action were referred. The commissioner determined: (1) That the questions in issue should be decided according to American law, although the ship was of English registry, and sailed under a charter party made in England, which stipulated for the application of the English law, and the observance for the purposes of average of the York-Antwerp Rules of 1890; (2) that the owners of the ship, on account of the negligent act of their servant, whereby the fire occurred, cannot recover contribution from the cargo owners for the ship's losses, and that, as a consequence, no action can be maintained against the ship owners for contribution towards the losses of cargo. The conclusion reached by the court renders it unnecessary to review the finding of the commissioner that the question in issue should be decided according to the American law. The following discussion relates (1) to the claimants' contention that no action whatever can be maintained against the ship owners for contribution towards the losses of cargo; (2) to the claim of the owners of the cargo that the losses of the ship owners must be excluded from the adjustment, in case one be directed. As to the first inquiry, the claimants' position is this: If the fire had not been caused by the negligence of the person in charge of the donkey boiler, the owner of the ship would have been liable to contribute in general average towards the losses of the cargo; but, as the fire was caused by the negligence of the person in charge of the donkey boiler, the carriers (owners of the ship), under The Irrawaddy Case, 171 U. S. 187, 18 Sup. Ct. 831, could not recover contribution for

their losses from the cargo, and that, as a consequence, the cargo owners cannot recover contribution towards cargo losses from the carriers. This contention of the claimants is not approved. It is true that under The Irrawaddy Case the carriers could not affirmatively demand contribution, because, notwithstanding the exculpation from the payment of damages for the loss of cargo accorded them by the fire and Harter acts, they are deemed guilty of constructive negligence when they seek to recover contribution for the ship's losses. But this imputed negligence does not exempt them from an action for contribution in general average at the instance of the cargo owner for cargo loss. The cargo owner has such action if the carriers be free from such imputed negligence; and can it be asserted logically that the carriers, when free from negligence, are liable to the cargo owners, but that this liability is discharged because the carriers are negligent, and such negligence caused the loss? According to such a contention, it is better to be negligent than unoffending. By it the carrier may plead his own wrong to escape an obligation that would be due from him, if he were without fault. The contention that a debtor may absolve himself from a debt by showing that his wrong was the occasion of the obligation violates essential principles, and cannot be otherwise than vicious. Without further discussion, the conclusion respecting the first inquiry is that the owner of the cargo may maintain an action for contribution for the losses of the cargo, although the carriers could not have maintained a similar action for the ship's losses. Thereupon the second inquiry arises: What losses should go into the adjustment,—the cargo losses alone, or both the ship's and cargo's losses? Now, the libelants' contention is that, as the carriers could not assert a claim for contribution, the owners of the cargo (there is a single ownership of the cargo) may invite an adjustment, and exclude the carriers from any beneficial participation, but, on the other hand, impose upon them the burden of contribution. This contention is based upon the theory that the status of the carriers is that of wrongdoers, whether they seek or are invited to a general average adjustment. For the purpose of reaching a correct conclusion the principles underlying general average may be considered briefly. When, in a sea adventure, the master of the ship, or some person of equivalent authority, voluntarily and necessarily makes a sacrifice of the ship or cargo, in whole or in part, for the purpose and with the result of saving the residue, or the lives of those on board, from a common, impending peril, the ship, cargo, and freight earned must contribute proportionally to the part thereof saved towards making good the loss suffered and the expenses necessarily incurred thereby. The contribution is called general, gross, or extraordinary average. The Star of Hope, 9 Wall. 203; 3 Kent, Comm. p. 232; Ord. de la Mar. (1683) bk. 3, tit. 7, and arts. 1–3; Birkley v. Presgrave, 1 East, 220, 228; Walthew v. Mavrojani, L. R. 5 Exch. 116, 120. The broad and equitable nature of the rule primarily contemplates ratable contribution from all interests saved towards all interests sacrificed. 1 Pars. Shipp. & Adm. p. 338; Ben. Adm. p. 166,

§ 295; Abb. Shipp. (13th Ed.) p. 635; Id. (5th Ed.) pp. 347, 348. The spirit and intention of this law is to place the persons interested, as far as may be, in the same relative position which they occupied before the peril was met, or "in order to recoup the loser, and place him once more on a footing with his co-adventurers." Macl. Shipp. (4th Ed.) p. 688. This intendment involves necessarily reciprocity of obligation and right, mutuality in taking and receiving payment. But, as stated by Judge Brown in Heye v. North German Lloyd, 33 Fed. 60, 64, while "reciprocity is undoubtedly the ordinary rule in general average," there are exceptions to this "reciprocity of right and obligation," as in the case of cargo carried on deck (The Paragon, 1 Ware, 322 [see annotations to same in 18 Fed. Cas. 1,085]; Triplet v. Van Name, 2 Cranch, C. C. 332, Fed. Cas. No. 14,176; Heye v. North German Lloyd, 33 Fed. 60, 65), goods shipped without the master's knowledge, the baggage of passengers, clothes of seamen, provisions for the ship, and munitions of war (Id.). These exceptions all turn upon the nature of the goods, the place or circumstance of their carriage. Is there another exception, based on the cause of the impending danger, and the relation thereto of the person whose goods are sacrificed? If the fault of the owner of the ship or cargo was the proximate cause of the peril, he could not invoke the benefit of the law of general average. But when he is brought in at the instance of the cargo owner, his fault, if it existed, was not formerly a matter of consideration. This happened for reasons now to be stated. In Carv. Carr. by Sea, § 373a, it is said:

"The earlier view appears to have been that, where there had been fault, the sacrifice was not to be regarded as a general average act; and, consequently, that no contributions were to be made, but the person in fault was to be looked to. This view is not now taken. 'The Rhodian law, which in that respect is the law of England, bases the right of contribution, not upon the causes of the danger to the ship, but upon its actual presence.' And thus innocent sufferers from a general average sacrifice, necessitated by neglect or other improper conduct, may claim contributions from other innocent co-adventurers."

The thought here conveyed is that the innocent cargo owner, damaged by sacrifice occasioned by the ship's negligence, is not required to find his remedy against the guilty ship before or instead of resorting to his innocent co-adventurers for contribution; but it is not implied, and probably was not in the writer's mind, that the ship owner could not be made a party to such contribution; nor was it considered whether he might participate in the average, if made such a party. The ship owner at fault was not included as one of the contributees, because he was liable for the whole loss, and therefore there was no occasion for considering his rights or duties in a general average adjustment instituted by his co-adventurers. When he paid the damages upon the theory that he was at fault, he was discharged from further payment in general average, and the sum paid by him was considered in any adjustment between the other co-adventurers. The City of Para, 69 Fed. 414; Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 20 C. C. A. 349, 74 Fed. 564, 569. If he did not pay,

and fault was ascribed to him, a general average suit was not the form of remedy, because thereby he would be called upon to pay only a portion of the damages for which he was liable. Hence it is not strange that occasion for decision of the question here involved has not arisen. Undoubtedly, the liability of the owners of the ship for sacrifices caused by her negligence precludes them from asserting affirmatively a right to recover contribution for her loss occasioned thereby. This is the former and present rule. The Irrawaddy, 171 U. S. 187, 18 Sup. Ct. 831; The Nicanor, 40 Fed. 361, 44 Fed. 504; The Agathe, 71 Fed. 528; Snow v. Perkins, 39 Fed. 334. The libelants contend that, as a consequence of this rule, it must be held in the present case that the carriers, declared innocent by the statute, absolved from all liability by the statute, defended by the statute from all payment of damages based on a claim of breach of duty, and so adjudged by the court, must respond in damages, as if for breach of the same alleged duty, in an action for general average contribution; and that in so responding they are not only subject to the usual adjustment of all losses and savings, which is undoubted, but that they must be excluded from recovering any of their losses, and, on the other hand, contribute for the losses of their co-adventurers. That is to say: (1) Should A., cargo owner, sue B., ship owner, in a direct action to recover $2,000 total damage to cargo, he may not recover, because B. has been guilty of no breach of duty owing to A. (2) But A. may institute an action for general average, and recover from B. (a) whatever sum B. should contribute under the usual rules of reciprocity obtaining in general average; also (b) a certain additional sum upon B.'s nonexistent breach of duty, which recovery is effected by excluding B.'s losses from the average upon the theory that he is a wrongdoer. This last sum, so alleged to be recoverable in general average, is some portion of the sum which would be recoverable in a direct action if there had been an actionable breach of duty, and which is not recoverable in such direct action because there is no breach of duty whatsoever. Hence, by this theory, A. may recover in general average pro tanto on the theory of B.'s guilt what the public law declares that A should not recover at all, for the precise reason that B. is innocent. Hence, if B.'s loss is $2,000 and saving $2,000, and A.'s loss is $2,000 and saving $2,000, under the usual rules of reciprocity A. can recover nothing from B.; but if B. be regarded as at fault, and thereby excluded from participating, except to contribute, he must pay to A. one-third of his loss, or $666.66. This is just one-third of the whole sum that A. is not permitted to recover in a direct action. It is no answer to this palpable evasion of the statutes to say that A. is not recouped for all his losses by B., but only for a part of them. His recovery, so far as it extends, is based on a nonexistent legal wrong; and a general average action, which is declared not to be based on tort (Ralli v. Troop, 157 U. S. 386, 403, 15 Sup. Ct. 657), is so far based on a tort, which has no being in fact, as to allow A. to recover not only the usual average contribution, but additional damages based on B.'s alleged wrong. A clear evasion of the statute results from such doc-

trine. The proof of the evasion does not rest upon theory alone, but upon mathematical demonstration.

But it is urged that the libelants' claim is the logical outcome of The Irrawaddy Case. On the contrary, it is considered that the supreme court suggested no holding that supports any such perversion of the statutes. In The Irrawaddy Case, B., ship owner, sued A., cargo owner, for contribution. The old rule was invoked that B.'s sacrifice was caused by the negligence of B.'s servants. To this it was answered that the Harter act relieved B. from liability based upon the negligence of his servants. To this it was replied that the Harter act relieved B. from paying any damages based upon his servant's negligence, but did not authorize him to maintain an action for contribution to his own losses against his co-adventurers. In that case the ship owner was claiming (1) that the Harter act relieved him from the obligation to pay the cargo owner's losses, which no one disputed; (2) that the Harter act authorized him to initiate an action in general average to recover pro tanto the losses of his ship, which was denied upon the theory that relief from liability for the loss of the cargo owner did not give him a right to maintain an action to recover for the ship's losses. The decision is tantamount to this: The ship owner may use the Harter act to shield himself from any claim for damages made against him, based upon breach of duty, but may not use the act as the basis of an action in his own favor. The decision does not practically diminish the benefit of the Harter act. That act gives immunity, under suitable states of fact, from claims based on constructive negligence. It does not confer causes of action upon the ship, but deprives cargo owners of causes of action against the ship. The benefit of the act is left whole and sound by the supreme court. Now, it cannot matter in what form of action the cargo owner seeks to recover damages from a ship owner protected by the statutes. He can no more do so under the guise of an action for general average contribution than in a direct action, provided in the former case he seeks to exclude the ship owner from the situation of a creditor; otherwise, the Harter act is not left untouched, is not left whole and sound for the ship owner's protection, but is violated quite as obviously and grossly as if the action had been direct, save as respects the amount of the recovery. In such case the cargo owner asserts and establishes something besides general average. He asserts and establishes a particular average, in a general average proceeding, and recovers thereon. In The Irrawaddy Case the supreme court could declare that by its holding it left the Harter act in full effect, and the ship owner in full enjoyment of it, and in full protection from it. That is literally true. In the present case, if the libelants' contention prevail, the actual result would be that (1) the ship owner would be deemed guilty of actionable negligence; (2) by reason of such negligence an action could be maintained against him to recover a sum of money from the payment of which the statute acquits him. This court, in an action between the same parties, has decided that the claimants were not negligent, and that they shall pay no damages based upon an allegation of negli-

gence. The court is now asked to adjudge, in an action between the same parties, that the claimants were negligent, and should pay damages therefor. The judgment in the first action, until reversed, is forever an estoppel between the parties as to the fact of the claimants' negligence; and it is thought that no instance exists in jurisprudence of the anomaly presented by the libelants' contention that, notwithstanding the estoppel between the parties, the fact found by the judgment in the first case against the libelants may be disregarded, and the opposite thereof, viz. that the claimants were negligent, and that they should pay damages by reason thereof, should be found and invoked in their behalf. The supreme court in The Irrawaddy Case could say to the ship owner, "All that the Harter act gives you is reserved to you by this decision." Such could not be said if the libelants' views were adopted here; and because it cannot be said, and because the opposite view is practically consistent with The Irrawaddy Case, this court has arrived at the following conclusions:

1. The fire and Harter statutes intend to relieve ship owners, in case of compliance therewith, from any liability to cargo owners for injury to cargo.

2. Such statutes do not give the ship owner any new right to sue the cargo owner for injury to the ship caused by the peril.

3. The cargo owner cannot, under the guise of an action for contribution in general average, recover upon the basis of the ship owner's alleged constructive negligence a portion of the damages, which upon the same alleged grounds he could not recover in a direct action.

4. While the ship owner, freed from liability by the statutes, may not invoke an action for general average adjustment, to obtain payment of his own losses, the cargo owner may do so; but, as the statutes prevent his recovering any damages based upon the ship owner's alleged negligence, the cargo owner may not, in the adjustment invoked by him, derive any benefit from such alleged negligence.

5. In such case the usual rule of reciprocity of right and obligation exists, and the adjustment should be made as if there was no negligence in the case, there being none in fact on the part of the owners.

There is some contention respecting the valuation of the ship. This subject was not presented orally. A fuller history than that disclosed by the briefs is needed for intelligent decision, and the matter is left for further presentation. It is now decided that the libelants may maintain the action, and recover, if they shall show some balance due to them on an adjustment based on the property lost and saved by the ship owners and by the cargo owners, irrespective of any element of negligence by the officers and crew of the ship.