# ST. PAUL FIRE & MARINE INSURANCE COMPANY.

*v.*

# THE SCHOONER "ERNESTINA" et al.

---

San Juan, Admiralty, No. 1242.

JETTISON.

Admiralty Law—Jettison.

     1. Jettison is one of the oldest branches of maritime law, coming down through the Rhodians to the Romans, and hence to the Consulado del Mar de Barcelona. The conditions are, the ship's cargo being in a common peril, sacrifice of property by the master, by which safety of other property is attained.

Same—Insurance Company.

     2. The libel must describe cargo owners and the right of the libellant.

Same—Harter Act.

     3. The Harter Act of 1893 removes the liability of the ship for events at sea, provided that it is seaworthy in all respects before leaving. This is a matter of defense to be negatived in an answer, rather than set out in the libel.

St. Paul Fire & M. Ins. Co. v. The "Ernestina."

Harter Act—General Average.

4. The Harter Act declared the ship not liable for loss resulting from saving life or property at sea; but this refers to loss of life or property in another vessel and is not to be construed as an abolition of general average for jettison.

Same—Pleadings.

5. The finding of an adjuster in general average is not binding upon the vessel, but if this finding is adopted as a part of the general libel it is good pleading although it may not amount to proof.

Opinion filed July 5, 1918.

Mr. *F. H. Dexter* for claimant.

Mr. *H. G. Molina* for libellant.

HAMILTON, Judge, delivered the following opinion:

The libel in this case filed April 27, 1918, alleges that the schooner Ernestina sailed from San Juan for Aguadilla, Porto Rico, laden with general cargo, and on November 28, 1917, heavy seas opened a leak so that it became necessary that the cargo be jettisoned, and this the master accordingly carried out, a portion being thrown overboard and a portion damaged by water through the hatch. That a considerable portion of the cargo was insured by libellant, who consequently paid $2-063.63, whereby it became subrogated to the rights of the cargo owners. That the amount was apportioned by the general average adjuster for Porto Rico among the different parties liable, and the statement is attached as an annex, libellant being entitled to recover that amount. The amount the schooner and freight should pay is estimated at $1,253.53, of which $40

is on account of the freight. The owners of the schooner deny liability, and libellant prays that said amount be paid by the schooner and freight. Exceptions were filed on April 30, 1918, and the matter has been submitted for decree thereon.

1. One of the exceptions sets out that these facts do not show liability to contribution in general average, but this exception must be overruled. General average liability for jettison is one of the oldest and best-known principles of maritime law. It doubtless was known to the Phœnicians, if not earlier; but the first time it appears in formal shape is in the Laws of Rhodes, which had in early Roman times succeeded the Phœnicians and other Greeks in the control of the maritime business of the Mediterranean Sea. The Rhodian Code has not come down to us in its entirety, but it so happens that this particular provision has from its adoption by the Romans, with whom it always prevailed, finally reaching the Digest of Justinian through the Sentential of Paulus. Cavetur ut, si levandœ navis gratia jactus mercium factus est, omnium controbutione sarciatur, quod pro omnibus datum est. Dig. 14, 2,1,1. Commercial affairs changed during the Middle Ages, although not so much in principle as in the parties who carried on the business, until the first existing real Maritime Code known to us was adopted by the Prohomes of Barcelona about A. D. 1266. Codigos de las Costumbres Maritimas de Barcelona XXI, Madrid 1791. De Lovio v. Boit, 2 Gall. 398, Fed. Cas. No. 3,776. The Rhodian laws are contained in 1 Azuni, Maritime Law, 265, and also in the Consulado cited. The Consulado recognized the principle that the ship is an individual apart from its owners and annexed to its contracts and liabilities a preference or lien.

St. Paul Fire & M. Ins. Co. v. The "Ernestina."

The principle of jettison has often received consideration in the courts, and the conditions justifying general contribution are, as stated by Mr. Justice Story: "First, that the ship and cargo should be placed in a common imminent peril; secondly, that there should be a voluntary sacrifice of property to avert that peril; and, thirdly, that by that sacrifice the safety of the other property should be presently and successfully attained." Columbian Ins. Co. v. Ashby, 13 Pet. 331, 338, 10 L. ed. 186, 190. See also Barnard v. Adams, 10 How. 270, 303, 13 L. ed. 417, 430, and later cases. An essential point, therefore, is that the act must be that of the master for the purposes of jettison. Thus it is held in Ralli v. Troop that the scuttling of a ship by the municipal authorities of a port, without the direction of her master, to extinguish a fire in her hold, is not a general average loss. 157 U. S. 386, 39 L. ed. 742, 15 Sup. Ct. Rep. 657. In the case at bar the cargo in question was thrown overboard by the master during a storm for the express purpose of saving the ship, and it was successful. General average for jettison would follow.

2. It is quite true that the libel must describe the cargo lost and the owners who are to contribute, but in the case at bar statement made by the adjuster is annexed as part of the libel and seems to be sufficiently full. So the manner in which the libellant, who was originally a stranger, gets into the case must and does appear from the libel. The libellant is an insurance company, but, as this is not a suit upon the insurance contract as such, it is not necessary to set it out in his verbis. It may be necessary to prove the contract; but the detailed contract is a matter of evidence, and not of pleading.

3. It would seem that the defense relied upon is contained

X. Porto Rico.—31.

specially in the exceptions numbered 3 and 4 as to negligence and seaworthy condition, under what is called the Harter Act of February 13, 1893, 27 Stat. at L. 445, chap. 105, Comp. Stat. 1916, § 8029. This prohibits stipulations in bills of lading waiving liability for negligence on the part of the ship from loading, custody, delivery, equipment or seaworthiness. Section 3 of this act is as follows: "That if the owner of any vessel transporting merchandise or property to or from any port of the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel nor shall the vessel, her owner or owners, charterers, agent, or master be held liable for losses arising from dangers of the sea or other navigable waters, acts of God, or public enemies, or the inherent defect, quality, or vice of the thing carried, or from insufficiency of package, or seizure under legal process, or for loss resulting from any act or omission of the shipper or owner of the goods, his agent or representative, or from saving or attempting to save life or property at sea, or from any deviation in rendering such service."

See The Irrawaddy (Flint v. Christall) 171 U. S. 187, 43 L. ed. 130, 18 Sup. Ct. Rep. 831; The Jason, 225 U. S. 32, 56 L. ed. 969, 32 Sup. Ct. Rep. 560. If negligence is shown it may be a defense, but it is not yet in this case. It has been held that where shipowners are not entitled to participation in the general average, the cargo owners could not do so. The Strathdon, 94 Fed. 206. But in the case at bar there is no al-

St. Paul Fire & M. Ins. Co. v. The "Ernestina."

legation of negligence on the part of the master which would excuse the owner.

The libel does not say in so many words that there was no negligence on the part of the owners or master, nor that the vessel was seaworthy and well equipped. If any of these was not so, it might well be that under the Harter Act the vessel could not recover; but this would seem to be a matter of defense to be negatived in an answer, rather than set out in the libel. The rule might be otherwise if the statute was defining some new policy to govern maritime affairs. Such is not the case, for the statute relates not to any affirmative policy, but to certain defensive matters, and under the ordinary rule they should be stated as such.

4. The provision in § 3 above is that the vessel and owners are not liable for loss resulting "from saving or attempting to save life or property at sea." The very object of jettison is to save life or property at sea, both of them. The question arises, therefore, whether the Harter Act is to be construed as abolishing the right to general average from jettison. This does not seem to be the construction in the authorities cited, and it is negatived by other considerations. It has been seen that the principle of jettison, and general average growing out of it, goes back to the remotest antiquity, and is in fact the oldest known title of maritime law. It is not to be supposed that the Congress of the United States meant to abolish a principle of this kind by inference. It could and should come about only by a distinct provision in the law. Moreover, the law in question has a different field of operation. It would seem to be directed to loss to a vessel when it turns aside for the purpose of saving some other vessel, such as might readily happen in

St. Paul Fire & M. Ins. Co. v. The "Ernestina."

war time while going to the assistance of a torpedoed ship. It is to be construed as "saving or attempting to save life or property" of another vessel, not that on the ship to which the bill of lading in question relates. "We think that, in determining the effect of this statute in restricting the operation of general and well-settled principles, our proper course is to treat those principles as still existing, and to limit the relief from their operation afforded by the statute to that called for by the language itself of the statute." The Irrawaddy, supra, p. 195. The Harter Act, therefore, does not abolish general average for jettison.

5. It is quite true that the finding of the adjuster is not binding upon the schooner and freight. The fact, however, that the adjuster has made some finding, and that this is adopted in a sworn libel and made a part thereof makes it good as pleading, whatever may be its probatory effect.

It follows, therefore, that the exceptions are not well taken and should be overruled.

It is so ordered.