CHRYSTAL et al. v. FLINT et al.

(District Court, S. D. New York. September 9, 1897.)

1. GENERAL AVERAGE—NEGLIGENT STRANDING—HARTER ACT.
    Under section 3 of the Harter act of February 13, 1893, providing that if the ship owner shall exercise due diligence to make the vessel seaworthy, neither the vessel nor her owner shall be responsible for faults or errors in her navigation or management, the ship owner has a right to contribution in general average for sacrifices made to save vessel and cargo stranded, although the stranding occurred through the negligence of the officers of the vessel.

2. SAME—ALLOWANCE OF GROSS FREIGHT ON JETTISONED GOODS.
    In a general average adjustment to be stated "according to the established usages and laws" of the port of New York, the allowance of freight upon jettisoned goods is the full freight as per bill of lading. The recent practice of the English adjusters to allow only net freight in such cases has not been adopted in New York.

This was a libel by George Chrystal and others against Flint, Eddy & Co., to recover upon a general average bond.

Cowen, Wing, Putnam & Burlingham, for libelants.
Butler, Notman, Joline & Mynderse, for respondents.

BROWN, District Judge.    In November, 1895, the British steamship Irrawaddy, upon a voyage from Trinidad to New York, stranded on the coast of New Jersey, through negligence in navigation.    Up to the time of stranding it is admitted that she was properly manned and equipped, and seaworthy.    In endeavoring to get her off the beach by working her propeller with reversed engines, her machinery was damaged by sanding and by water from leaks, which was allowed to flow into the engine room in order that it might be pumped out; and, on the sluices becoming choked, holes were bored in the bulk-

head to permit the water to pass to the pumps. With the aid of salvors, the vessel was finally floated on November 20th, after a jettison of a considerable quantity of cargo. She then completed her voyage and made delivery of the rest of the cargo to the consignees in New York, on their executing an average bond for the payment of all losses and expenses which should appear to be due from them, provided they were stated and apportioned by the adjusters "in accordance with the established usages and laws in similar cases."

An adjustment was afterwards made in New York which allowed in the general average account, (1) the salvor's compensation, (2) the value of the jettisoned cargo, and (3) to the ship owner, the gross freight on the cargo jettisoned, and (4) the damages to the ship by sanding and by the flow of water into the engine room. The respondents thereupon paid $4,483.64, their full assessment, except the sum of $508.29, charged against them for the last two items above named, which they refused to pay, on the ground that as the stranding was caused by negligence in navigation, the ship owners were debarred from any recovery of general average from the cargo; they also claim that if any freight is recoverable for the goods jettisoned, it is only the net freight, i. e., the gross freight less the stevedore's and other charges which would have been incurred by the ship owners on the actual delivery of the goods had they not been jettisoned. The difference, it is agreed, would in this case be $13.65.

The above libel was filed upon the general average bond, for the recovery of the last two items in the general average adjustment above named, on the ground that as the ship owners are not responsible to the cargo owners for the negligent navigation of the ship under the provisions of the Harter act of 1893 (2 Supp. Rev. St. p. 81), such negligence does not now debar them from general average claims; and that gross freight is recoverable, because such is the established law and usage of this country and of this port. All the facts are admitted, except as to the custom in regard to charging gross freight, upon which point witnesses have been examined upon both sides.

The questions presented are important, because they enter largely into every case of a general average adjustment growing out of faults or errors of navigation; and it is essential that the rule which is to be followed in average adjustments in cases falling within the Harter act, should be finally determined.

There is no doubt of the ordinary rule, in the absence of statute or contract to modify it, that where the peril has been brought about by the fault of the ship owner or his servants in the navigation of the ship, the ship owner cannot recover from the cargo reimbursement by means of a general average for his expenses in rescuing the ship or cargo. The codes of the principal maritime countries so provide in express terms; and our law is the same. Gourl. Gen. Av. 15; Lown. Gen. Av. (4th Ed.) 34; The Ontario, 37 Fed. 222; Ralli v. Troop, Id. 888, 890; Van den Toorn v. Leeming, 70 Fed. 251. This rule is not enforced against the ship owner alone; it applies equally to the cargo owner, and to any other claimant of contribution by whose fault the necessity for the sacrifice or expense was caused. Several of the maritime codes expressly so state. Germany, § 704; Sweden, § 191;

Denmark, § 192; Spain, § 810. Lowndes summarizes the principle and the general rule as follows:

"The broad principle may be laid down that no one can make a claim for general average contribution, if the danger to avert which the sacrifice was made has arisen from the fault of the claimant, or some one for whose acts the claimant has made himself, or is made by law, responsible towards the co-contributors." Page 34.

Considering that the claim to contribution in general average rests only upon equitable principles, it is hardly conceivable that this rule of exclusion could be otherwise. For if one's own fault, or the fault of those for whom one is legally responsible, had made necessary the expenses he incurs to retrieve it, there is no principle of equity that can sustain his claim that other persons, not in privity with him, should help him bear the loss. It is the responsibility for the fault and for the consequent damage that makes the crucial distinction in these cases. All the maritime codes that exclude the ship owner from reimbursement in general average for the ship's fault, make him liable to cargo owners for the master's bad navigation. This exclusion is based on his liability to the cargo owner, which logically and necessarily excludes the ship owner's claim to contribution in two ways: First, because the obligation to indemnify would require the ship owner at once to restore to the cargo owner as damages whatever he might collect from him as general average; second, because this same obligation makes the ship owner's claim to contribution incompatible in its inception with the fundamental conditions of a general average claim, viz., that there must be, (1) a sacrifice, (2) a sacrifice voluntarily incurred, (3) a sacrifice incurred for the common benefit. But when the ship, through the master's fault, is legally responsible for all loss and damage, her expenses in rescuing the cargo from the peril which that fault has brought about cannot possibly be treated as a sacrifice, since such expenses are nothing more than the performance of a legal obligation; for the same reason they are not voluntarily incurred, in the legal sense, since the ship is legally bound to make the rescue and bear all the expense of it, or else pay the increased damages from omitting to do so; and so the expenses of rescuing the cargo are not ultimately for the cargo's benefit, but for the pecuniary benefit of the ship, in diminishing as much as possible the cargo damages for which the ship's liability is already fixed by reason of her fault. Thus the ship's liability for all the loss and damage arising from her fault, whenever this liability arises, necessarily excludes any equitable claim by her owner to an average contribution from the cargo, because the legal conditions of such a claim cannot in such a case exist; and because, if allowed, any such contribution must be at once repaid to the cargo owner as damages.

I have dwelt somewhat fully upon this liability of ship and owner, and its relation to general average claims against the cargo, because there is no doubt, I think, that the liability to indemnify the cargo owner is the sole ground of the exclusion of the ship owner's claim to general average compensation for his expenses in rescuing the adventure from a peril caused by bad navigation; and because it, therefore, seems necessarily to follow that in cases where all such liability

is abolished by law, as it is under the circumstances of this case by the Harter act, no such exclusion can be justified; and that where no such liability exists on the part of the ship or her owner, his right to a general average contribution from the cargo arises necessarily by the same principles of equitable right that apply in ordinary cases of general average.

Where due diligence has been exercised to make the ship seaworthy, and a common danger arises upon the voyage by "fault or error in the navigation or management of the ship," the third section of that act declares, that "neither the vessel nor her owner, agent, or charterer shall become or be held responsible for damage or loss resulting therefrom." The previous liability of the ship owner to the cargo owner for faults of navigation, is thus abolished in all cases coming within the act. In such cases, faults in the navigation or management of the ship are no longer, by construction of law, faults of the owner, as heretofore; and the ship and her owner are now no more liable to the cargo owner for his damages therefrom, than the latter is liable to the ship owner for the resulting damages to the ship. Both are alike strangers to the fault, and equally free from all responsibility for it; and hence all expenditures or losses voluntarily incurred for the common rescue are no longer made in the discharge of an individual legal obligation, or in diminution of a fixed liability resting upon one of the parties only, but are truly a sacrifice, voluntarily incurred, and for the common benefit, as much and as truly when made by the ship owner as when made by the cargo owner alone. On principle, therefore, in such cases, the one is as much entitled to a general average contribution for his sacrifices as the other.

In this country and in England it has been held that the mere fact that the common peril arose by bad navigation, or bad management of the ship, or that a remedy in damages therefor may exist against the ship owner, does not prevent recovery of general average compensation by a cargo owner against the ship and against other cargo owners for his sacrifices made for the common benefit. Pacific Mail S. S. Co. v. New York, H. & R. Min. Co., 69 Fed. 414, affirmed 20 C. C. A. 349, 74 Fed. 564; Strang v. Scott, 14 App. Cas. 601, 609. And several of the maritime codes expressly so declare. German Code, § 704; Sweden, 1864, Act No. 144, Code, 191; Norway, § 72; Denmark, § 192. In Strang v. Scott, supra, Lord Watson in delivering judgment in house of lords says:

"The owners of goods thrown overboard having been innocent of exposing the Abington and her cargo to the sea peril which necessitated jettison, their equitable claim to be indemnified (by a general average contribution) for the loss of their goods is just as strong as if the peril has been wholly due to the action of the winds and waves."

Under this decision, if the ship owner be "innocent of exposing the ship and cargo to the common peril," as he is under the Harter act, or wherever a valid exemption from liability exists by the bill of lading, the ship owner's right to an average contribution must be sustained. Accordingly, in the subsequent case of The Carron Park, 15 Prob. Div. 203, Lord Hannen, then president of the probate di-

vision, sustained the ship owner's claim to contribution from the cargo in general average for expenses caused by negligent navigation, where by the terms of the bill of lading the ship owner was relieved of all responsibility for such negligence; and this upon the simple ground that "the relation of the goods owner to the ship owner has been altered by the contract that the ship owner was not to be responsible for the negligence of his servants." Upon similar clauses in the bills of lading, the same adjudications, and upon the same ground, have been made in the French court of cassation (L'Amerique [1878] 1 Dalloz, Rep. 479; The Alex. Lawrence [June, 1894] 10 Rev. Int. du Droit Mar. p. 147); and also in Belgium (The Alacrity [1895] 11 Rev. Int. du Droit Mar. 123), though the contrary seems to have been held in Holland (see The Mary Thomas [1894] Prob. Div. 108, 113, 116).

It is urged that the Harter act makes no allusion to general average, and was not designed to disturb the law on that subject. This might have been urged more plausibly as to the effect and intent of the negligence provisions in bills of lading. Several of the above adjudications as to the effect on general average of such clauses in bills of lading, were made long before the passage of the Harter act; and the history of that act shows that it was a part of its general intent to secure to ship owners under our law, and within the limits prescribed by our act, the benefits enjoyed by ship owners under such bill-of-lading exemptions by the foreign law. One of the benefits to the ship owner by the foreign law under such exemptions, as already adjudged when the Harter act was passed, was the right to a general average contribution; and the inference, if any, as to the actual intent of our act would be that it was designed to embrace that incidental consequence; at least, the contrary cannot be affirmed.

Quite aside, however, from the above adjudications, and from the question of any definite intent by congress to modify the law of general average, the ordinary rules of construction require that the exemption which the act is evidently designed to afford to the ship owner from his previous responsibility to the cargo owner, should be given its full natural scope and effect, without abridgment by any arbitrary or narrow construction that is not warranted by anything apparent in the context, or from the evident object of the statute. "The whole object of the act," says Mr. Justice Brown in The Delaware, 161 U. S. 459, 16 Sup. Ct. 516, "is to modify the relation previously existing between the vessel and her cargo," and to fix that relation, that is, a relation of nonresponsibility for damages or losses arising out of bad navigation. Such a statutory change in a broad principle of law must carry with it other changes as its necessary accompaniment. In abolishing the previous responsibility of the ship and owner, the intent of the statute must be presumed to be to abolish also whatever is immediately dependent upon that responsibility. In no other way can the statute have its fair and natural effect.

The application of this new relation of nonresponsibility under the Harter act to cases of general average, does not, in fact, make the least change in the principles of general average contribution. The rule remains as before, that he by whose fault, actual or constructive,

the ship and cargo have been brought into danger, cannot recover an average contribution for his expenses in extricating them. And so the counter rule remains as before, that the interest which, being without fault, makes sacrifices for the common rescue, is entitled to an average contribution from what is thereby saved. Prior to the Harter act, the ship owner, under our law, was constructively in fault for bad navigation, and hence fell within the former rule. The Harter act, by abolishing his constructive fault and freeing him from all responsibility, withdraws him from the former rule and entitles him to contribution under the latter.

In Ralli v. Troop, 37 Fed. 890, it was said that "to deny the owners the benefit of a general average contribution on the ground of negligence, would impose on them, in effect, a liability for the fire from which the statute exempts them (Rev. St. § 4282)." And so in the present case, to say that the ship owners shall bear at their own charge all the expenses voluntarily incurred by them in rescuing this ship and cargo from a common peril for which the statute says they shall not be responsible, and to give to the cargo owner all the benefits resulting to him from these expenses, without charge, by refusing to impose on him the ordinary contribution in general average always hitherto made to one not in fault, is, in effect, to make the ship owner responsible, pro tanto, for the peril and its consequences, contrary to the very letter and purpose of the statute; since the owner is often practically compelled to make these advances for the common safety, though not legally responsible for the fate of the cargo.

It is, indeed, the owner's duty to relieve ship and cargo in every peril so far as in his power; but not to do this at his own charge, unless the peril arose through his actual or constructive fault. The Portsmouth, 9 Wall. 682, 687. If the law denied contribution to him for sacrifices made for the common good when he was not in fault, the result plainly would often be disastrous to cargo. Maritime policy and necessity not only forbid any such rule, but ages ago they established the opposite rule; that compensation shall be made to those who, not standing in any relation of legal responsibility, make sacrifices for the common safety. The Harter act certainly was not designed to disturb that principle; and it requires that the owners in this case shall receive due contribution from the cargo.

2. Nor do I think, upon the proof, that any error was made in allowing contribution for the gross freight on the cargo jettisoned, without deduction for the slight expense which would have attended actual delivery.

The condition of the average bond upon which the action is brought is, that the losses and expenses shall be apportioned by the average adjusters "in accordance with the established usages and laws in similar cases." The general rule requires the adjustment of average to be made according to the port of destination, or where the voyage is ended, which in this case was New York. The evidence shows clearly that the long-established usage here has been to allow the gross freight; and where the bond adopts the local usage, it controls, even if the general law were otherwise. Stewart v. Steamship Co., L. R. 8 Q. B. 88.

But the general law of this country, and largely elsewhere, except in England, seems to be in accordance with the custom here. Per Story, J., in The Nathaniel Hooper, 3 Sumn. 542, Fed. Cas. No. 10,-032; Insurance Co. v. Ashby, 13 Pet. 331, 334; The Ann D. Richardson, Abb. Adm. 499, 507, Fed. Cas. No. 410; Dix. Ins. (2d Ed.) 148; Gourl. Gen. Av. 109, 112; 2 Phil. Ins. §§ 1301, 1368; 1 Valin, pp. 654, 655; Code Commer, art. 304; 2 Valroger, Comm. p. 366; 3 Desjardins Dr. Mar. p. 682; Ulrich Grosse Har. p. 59; Italian Code, § 576; Nuova Cod. per Castagnola, p. 435 (1896); 1 Magen, Ins. 289.

The same practice seems to have prevailed for a long period in England, but has been of late modified by the adjusters there. Some efforts have been made by protests, as appears from the evidence, to introduce here the recent English practice, but thus far with so little result as plainly not to amount to any change in the prevailing usage. In the amount of expense, though small, which the ship actually saves by not delivering the jettisoned cargo, could, as a rule, be accurately ascertained at a comparatively small cost, I see no good reason why the existing custom should not equitably be modified, and the deduction allowed. But under the usage so long and widely prevailing, I do not feel authorized to hold that the adjustment in this case is incorrectly made up. Most of the ship's expenses remain the same, whether a part of the cargo is jettisoned or not; such as for wages, provisions, insurance, wear and tear, pilotage, towage, wharfage, etc.; only the mere handling of the cargo seems to remain, and that was done formerly, and is to some extent still done, by the crew, so that the handling of the jettisoned cargo would have caused little, if any, additional expense to the ship. If stevedores are employed to unload the ship, as is now becoming general, the saving of the cost of handling the jettisoned cargo, is probably easily ascertainable; and when that becomes the established general method of business, the usage of adjusters in the allowance of freight, it would seem ought to be and probably will be modified accordingly.

Decree for the libelants for the two items claimed, with costs.